## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

BRENDA WILLMORE,

        Plaintiff,

v.

SAVVAS LEARNING COMPANY LLC,

        Defendant.

Case No. 22-2352-TC-ADM

## MEMORANDUM AND ORDER

Plaintiff Brenda Willmore ("Willmore") brings this action against defendant Savvas Learning Company LLC ("Savvas") alleging employment discrimination in violation of the Age Discrimination in Employment Act and Title VII of the Civil Rights Act of 1964.  This matter comes before the court on Plaintiff's First Motion to Compel.  (ECF 63.)  By way of this motion, Willmore asks the court to order Savvas to produce documents in response to Willmore's First Requests for Production of Documents ("RFP") Nos. 4 and 7.  Savvas opposes the motion on the grounds that Willmore's document requests seek irrelevant information that is not proportional to the needs of the case, and the requests are overly broad.  For the reasons stated below, the motion is granted as to RFP No. 4 and denied as to RFP No. 7 and as to Willmore's request for attorneys' fees.  Savvas's related Motion for Sanctions (ECF 72) is denied.

## I.   BACKGROUND

Willmore was a long-time employee of Pearson Education LLC ("Pearson"), which operated a large-scale business of selling textbooks to educational institutions and servicing those educational accounts for new and repeat textbook orders.  Pearson promoted Willmore to Sales Manager for the State of Kansas in 2014.  Savvas acquired Pearson in 2017, and Willmore retained

the same title until Savvas terminated her employment on May 18, 2021.  (ECF 63, at 5.)  Savvas contends Willmore was fired for insubordination and because two large customer accounts, the Blue Valley and Derby school districts, complained about Willmore and asked for her to be removed.  (ECF 65, at 1.)  Willmore contends Blue Valley's complaint was the result of the district's new curriculum director misunderstanding the district's earlier purchase of an electronic subscription.  (ECF 63, at 5.)  And Willmore says Derby's complaint was the result of a double shipment of textbooks that was "exclusively the fault" of Savvas's shipping department, but Derby "became frustrated" and asked that Willmore not service the account.  Willmore says she was not told she was taken off the account, and Derby got upset when it "erroneously believed" that Willmore sent a meeting invite to Derby (even though Derby had asked for a different account representative) when in fact it was Savvas's marketing and/or IT department that sent the invite.  (ECF 63, at 6.)  Willmore insists Savvas knew she did not send the meeting invite but fired her anyway because the reach-out to Derby was "insubordinate" to her boss Mica Lesser's instruction not to contact Derby.  (*Id.*)  Willmore claims that Savvas's alleged reasons for firing her are a pretext because Savvas wanted to replace her with a younger male employee, and the decision to replace her was made long before there was any claimed insubordination.  (*See* ECF 1 ¶¶ 18-19, 33.)  Willmore filed this lawsuit against Savvas, claiming discrimination based on age and sex.  (ECF 1.)

The court convened a scheduling conference and issued a scheduling order in late January (ECF 12, 13), after which the parties served written discovery and ESI disclosures.  (ECF 15, 17, 20.)  Willmore also served subpoenas on the Blue Valley and Derby school districts.  (ECF 22, 23.)   At issue here are Savvas's responses and objections to Willmore's First Requests for Production of Documents—specifically, Savvas's responses to RFP Nos. 4 and 7.  (ECF 26.)

### A. **RFP No. 4 Regarding Savvas Salesforce Records**

Willmore's RFP No. 4 requests documents "related to Plaintiff's service and business interactions -- which occurred during the last 5 years of Plaintiff's employment at SAVVAS -- with and to the Derby School District and/or the Blue Valley School District."  (ECF 63-1, at 1.) Savvas initially objected to this request as "overly broad, unduly burdensome, not properly limited in time and scope, vague and ambiguous in the use of the phrase 'copies of all files, statements, documents, quotes, approvals, and communications related to Plaintiff's service and business interactions,' requires speculation and conjecture from Defendant with respect to the documents being requested, fails to identify the documents being requested with reasonable particularity, and is not relevant and/or proportional to the needs of the case."  (*Id.*)  After the parties met and conferred, Willmore's counsel sent a follow-up email memorializing the parties' positions on this RFP: "defendant believes this request is way too broad, plaintiff believes it can be easily responded to by producing all of the material in salesforce for these two accounts," and "[d]efense counsel will check into getting the materials from salesforce that are responsive to the request."  Savvas's counsel responded, "Correct."  (ECF 65-1, at 2.)[1]

On May 15, Willmore's counsel followed up on outstanding discovery issues and, with respect to RFP No. 4, asked Savvas's counsel to "**PLEASE CONFIRM THAT <u>EVERYTHING IN SALES FORCE FOR THE DERBY AND BLUE VALLEY ACCOUNTS HAS BEEN PRODUCED?  LESS THAN 10 PAGES SUGGESTS IT HAS NOT.</u>**"  (ECF 63-4, at 2 (emphasis in original).)  The next day, Savvas's counsel responded, "I do anticipate supplementing with additional documents."  (*Id.*)

---

[1] "Salesforce" is a cloud-based software company that provides customer relationship management software and applications, among other offerings.  *https://www.salesforce.com/* (last visited 9/6/2023).

But that supplementation never came, so Willmore requested a pre-motion discovery conference with the court to discuss this discovery dispute (as well as other discovery issues). At that discovery conference on July 7, Savvas told the court that its initial production in response to RFP No. 4 included "reports that were pulled within Salesforce regarding the plaintiff's contacts with Derby and Blue Valley during this time period." (ECF 66, Hr'g Tr. at 5:1-5.) Both parties indicated they understood these documents would be found in Salesforce and that Savvas had agreed to produce the Salesforce records for the Blue Valley and Derby school district accounts for a five-year period, to the extent those records exist. (*Id.* at 4:15-9:25.) Savvas's counsel pointed out, however, that tracking down the information had been more difficult than initially anticipated because, firstly, Savvas did not implement the Salesforce program until 2020 and, secondly, Savvas "was a division of Pearson that was spun off and then separately bought through a capital management company." (*Id.* at 5:1-9.) But he said Savvas was working with their Salesforce representative to track down the documents he understood Willmore was seeking – including "the individual e-mails and any other attachments that would be within that data." (*Id.* at 5:10-21.) As reflected in the court's order following the July 7 discovery conference, Savvas agreed to supplement its production in response to RFP No. 4 by July 18. (ECF 49, at 1.)

But, again, Savvas did not produce any additional documents responsive to RFP No. 4. Instead, on July 19, Savvas served a second supplemental response to RFP No. 4 stating that Savvas had no other responsive documents in its "possession, custody, and/or control other than documents identified as A003597 - A003609 and A004076 - A004082." (ECF 63-1, at 1-2.)

Willmore's counsel immediately followed up on July 19, and again on July 23, asking whether Savvas produced "EVERYTHING" in Salesforce for the Derby and Blue Valley accounts. Savvas's counsel responded on July 24 by pointing to Savvas's Second Supplemental Response to

RFP No. 4.  (ECF 65-2, at 2-4.)  Savvas's counsel explained that, despite his prior representation that Savvas intended to produce all responsive documents Savvas could track down, Savvas was unable to produce anything further because "we did not have access to Plaintiff's inbox, so we do not have the individual emails and documents themselves."  (*Id.* at 2.)  Counsel also confirmed "yes, we have produced everything within Salesforce.  No, we are not withholding any responsive documents."  (*Id.*)

In response, Willmore's counsel expressed disbelief at Savvas's suggestion that it had produced everything responsive to RFP No. 4:

> Documents responsive to this RFP are probably the most critical documents to this entire case! And this has nothing to do with Brenda's emails being erased. SAVVAS is claiming there were specific mistakes made by Brenda regarding Derby and Blue Valley. SAVVAS is also claiming the company was slated to lose millions of dollars if a change wasn't made. Having complete documents from Sales Force for these accounts goes directly to these issues. It simply is not credible for SAVVAS to say everything connected to those two accounts is unavailable to the company. You have produced a total of 6 documents for those accounts for a 5 year period. There are more documents and they need to be produced. Those two customers are still customers of SAVVAS and, this being true, SAVVAS would need all the historical documents to continue serving the customers. As we now know, Account Reps are constantly required to go back to see what orders were made years before to determine licensing, pricing, etc. Brenda used Sales Force at Curriculum Associates and she uses Sales Force at her current job. Nothing gets erased from Sales Force. If Brenda is working on an account, she can go back for years (prior to her even working there) to see historical data in Sales Force. Same was true, and is true, at SAVVAS.

(ECF 65-2, at 1.)  Willmore's motion explains that her counsel also expressed concern that Savvas had narrowed the request (from the previously-agreed upon scope of all Salesforce records related to the two school districts) to require that Willmore be directly involved or "tied" to the documents

in order for them to be responsive, which allowed Savvas to claim they had no further responsive documents to produce.  (ECF 63, at 4-5.)

### B.   RFP No. 7 Regarding Search Terms

Willmore's RFP No. 7 seeks:

> Any documents, emails, texts, or other electronic communications (hereafter "RESPONSIVE HITS") possessed by or under the control of SAVVAS which are responsive to electronic searches [structured to identify anything with the terms of "Brenda" OR "Willmore" OR "Wilmore" AND "Derby" OR "usd260" OR "Blue Valley" OR "bluevalley" OR "age" OR "old" OR "retirement" OR "woman" OR "female" OR terminate OR terminated OR fired OR fire AND with a creation date during the time period of January 1, 2019 through August 20, 2021 but excluding emails that Plaintiff was a recipient of during her employment, to include group emails that had Plaintiff as part of the distribution list] to be conducted on any mobile phones, computers, hard-drives, servers, or other electronic devices used for SAVVAS' business or work purposes by Bethlam Forsa, Mica Lesser, James Lippe, Debi Debiak, and/or Sheri Jolcover (as well as any other SAVVAS employees not listed here but who were involved in any discussions or decisions about ending Plaintiff's employment).[2]

(ECF 63-1, at 2.)  Savvas initially objected to this request on the grounds that "it is overly broad, not properly limited in time and scope, and is not relevant and/or proportional to the needs of the case."  (*Id.*)

On April 21, the parties met and conferred about this request, and Savvas agreed to work with Willmore to run search terms for a set time period.  (ECF 63, at 2, 11; ECF 65, at 7.) Willmore's email memorializing the parties' meet-and-confer stated that "defendant is running the search requested by this RFPD.  All responsive hits will be produced, and any privilege material

---

[2] RFP No. 7 includes two footnotes that are not reiterated here for the sake of simplicity and to avoid confusion.  The first footnote asks for a meet-and-confer if Savvas believed "that using these names as search terms will result in voluminous false hits."  The second footnote requests that Savvas search a person's "entire device" for responsive documents and that email searches be conducted across the email accounts and folders of all custodians described in the request.

will be placed on a privilege log.  In the event that the hits are extremely voluminous, counsel will discuss ways to narrow the search."  Savvas's counsel responded, "Correct." (ECF 65-1, at 2.) Savvas then reportedly attempted to collect the Google drive and email accounts of the five agreed-upon custodians and run the search terms using the requested date parameters.  As such, Savvas supplemented its response to RFP No. 7 to state that, "[s]ubject to the search terms prepared by Plaintiff's counsel on May 4, 2023, responsive documents will be produced on a rolling basis" and identified a set of documents (F000133-4340) as responsive to the request.  (ECF 63-1, at 3.)  On May 15, Willmore followed up on that supplement by asking Savvas whether the supplemental response meant "there were no hits that are privileged, or there were hits for which Savvas is claiming privilege."  (ECF 73-6, at 2.)  The next day, Savvas's counsel responded, "I intend to produce a privilege log.  I also intend to roll out the remainder of the production to this RFP, which resulted in thousands of documents."  (ECF 73-6, at 2.)

Savvas's productions, however, were riddled with problems—proper load files were not initially included, custodial metadata was missing, and email attachments were not associated with the parent emails.  Willmore's counsel complained to Savvas that he could not efficiently review the productions.  (ECF 63, at 2.)  Willmore's counsel also noticed the documents showed dates outside of the search parameters and the ESI appeared to not be limited to the five custodians, thereby resulting in a large production of 130,000 pages, some of which appeared to be "completely unrelated to anything."  (ECF 66, at 10-13.)  Willmore raised these problems with Savvas's production with the court during the July 7 discovery conference.  At the time, Savvas thought these problems could be resolved with a quick fix by having Savvas's IT populate custodian information; Savvas blamed the breadth of the production on the broad search terms.

(ECF 66, at 13-16.)  The court therefore ordered Savvas "to populate the metadata fields with custodian names for documents produced in response to RFP No. 7 by July 14." (ECF 49, at 1.)

In attempting to resolve the problems, however, Savvas learned that the prior search had not been run correctly and had therefore generated a large number of false hits.  Savvas also discovered that it was missing a document collection from one of the agreed-upon custodians, Savvas's CEO, Bethlam Forsa.  Savvas agreed to re-run the search terms against all five custodians, including Forsa.  (ECF 64, Hr'g Tr. at 13:24-14:12.)  When Savvas did so, it discovered that the search terms hit on documents in Forsa's collection that were irrelevant to Willmore's claims.  Savvas informed Willmore and the court of this issue during a discovery conference on July 18.  (ECF 54; ECF 64, Hr'g Tr. at 14-15.)  Savvas explained that, because the search terms were so broad and because the CEO is privy to a large amount of high-level, company-wide data and reports, the search terms hit on irrelevant subsets of documents that Savvas intended to withhold from its production.  This included sensitive documents concerning company-wide furloughs in response to the COVID-19 pandemic, sales and/or employee bonus information not related to Willmore, reporting information regarding job openings not related to Willmore's position, payroll documents detailing company-wide salaries, and documents relating to other employees and customers not in Kansas.  (ECF 54; ECF 63-1, at 3; ECF 64, at 14-15.)  The court provided the parties with feedback on Savvas's objections to producing such documents so that Savvas could "continue to move forward with the production expeditiously." (ECF 54.)  Later that day, Willmore filed a motion for reconsideration of the court's discovery "ruling" permitting Savvas to withhold certain documents as irrelevant, which the court denied because neither party had formally motioned the court to decide this issue and therefore the court had made no definitive "ruling" for the court to reconsider.  (ECF 55, 56.)

On July 19, Savvas served a second supplemental response to RFP. No. 7 that stated:

> Defendant renews its prior objections to this Request: That the Request is overly broad, not properly limited in time and scope, and is not relevant and/or proportional to the needs of the case.
>
> Subject to and without waiving these objections, excluding documents concerning company-wide furloughs in response to the COVID-19 pandemic, sales and/or employee bonus information not related to Plaintiff, reporting information regarding job openings not related to Plaintiff's position, payroll documents detailing company-wide salaries, documents relating to other employees and customers not in Kansas, and documents withheld by the attorney-client privilege, Defendant identifies G00000l -G010495 as responsive to this request.

(ECF 57, 63-1, at 3.)  Savvas produced the identified batch of documents to Willmore that same day.

## II.   **LEGAL STANDARDS**

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  FED. R. CIV. P. 26(b)(1). Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *see also Booth v. Davis*, No. 10-4010-RDR, 2011 WL 2008284, at *6 (D. Kan. May 23, 2011) ("Relevance is broadly construed, and a request for discovery should be allowed unless it is clear that the information sought can have no possible bearing on the claim or defense of a party." (internal quotations and citation omitted)).  "Courts should lean towards resolving any doubt as to relevance in favor of discovery."  *Foreclosure Mgmt. Co. v. Asset Mgmt. Holdings, LLC*, No. 07-2388-DJW, 2008 WL 3822773, at *4 (D. Kan. Aug. 13, 2008).  "Control of discovery is entrusted to the sound discretion of the trial courts."  *Punt v. Kelly Servs.,* 862 F.3d 1040, 1047 (10th Cir. 2017) (internal quotation and citation omitted).

The party seeking discovery has the initial burden to establish the documents sought are relevant under Rule 26(b)(1).  *See Lawson v. Spirit AeroSystems, Inc.*, No. 18-1100-EFM-ADM, 2020 WL 243598, at *3 (D. Kan. Jan. 16, 2020).  When the discovery sought appears relevant on its face, or the discovering party has established relevance, the party resisting discovery bears the burden to support its objections.  *See Ehrlich v. Union Pac. R.R. Co.*, 302 F.R.D. 620, 624 (D. Kan. 2014) (holding the party resisting discovery bears the burden to show why a discovery request is improper); *Martin K. Eby Const. Co. v. OneBeacon Ins. Co.*, No. 08-1250-MLB-KGG, 2012 WL 1080801, at *3 (D. Kan. Mar. 29, 2012) ("Once this low burden of relevance is established, the legal burden regarding the defense of a motion to compel resides with the party opposing the discovery request.").  The party resisting this discovery does not carry this burden by asserting "conclusory or boilerplate objections that discovery requests are irrelevant, immaterial, unduly burdensome, or overbroad." *Sonnino v. Univ. of Kan. Hosp. Auth.*, 221 F.R.D. 661, 670 (D. Kan. 2004).  "Rather, an objecting party must specifically show in its response to the motion to compel, despite the broad and liberal construction afforded by the federal discovery rules, how each request for production or interrogatory is objectionable." *Id.* at 670-71.

## III.   **ANALYSIS**

### A.  **Willmore's Motion to Compel Is Granted as to RFP No. 4.**

Willmore and Savvas agree that RFP No. 4, as narrowed by the parties in meet-and-confer correspondence, seeks documents and communications in Salesforce for the Derby and Blue Valley accounts.  (ECF 65-1, at 2; ECF 66, Hr'g Tr. at 8:20-9:25.)  Indeed, Savvas acknowledged early on that, because Savvas wiped Willmore's company-issued laptop and cell phone upon her termination, Willmore's Salesforce data was being preserved—thus insinuating that Salesforce may be the main, if not the only, source of documents evidencing Willmore's activities with the

Blue Valley and Derby school districts.  (ECF 63, at 9-10.)  Knowing the importance of the Salesforce data, Savvas indicated in both meet-and-confer correspondence and at the July 7 discovery conference that Savvas was working with a Salesforce representative to track down the requested information and would be supplementing its initial production of six documents. (ECF 73-6; ECF 66, Hr'g Tr. at 5-9.)  Despite agreeing during the July 7 discovery conference that (1) RFP No. 4 called for Savvas to produce Salesforce documents for the Blue Valley and Derby school district accounts, and (2) Savvas would work with its Salesforce representative to supplement its production, Savvas has not produced any additional documents.

Savvas does not dispute that it has produced only six documents[3] from Salesforce that it contends are the only documents responsive to RFP No. 4.  (ECF 63, at 3-4.)  Savvas told Willmore and the court that it was working with a Salesforce representative to track down more information and would be supplementing its production.  Yet Savvas has not done so.  Savvas does not explain its failure to supplement.  Instead, Savvas re-raises its "vague and ambiguous" objection to RFP No. 4 and contends that Willmore's counsel "never provided any clarity on the types of documents Plaintiff is seeking" until July 24 when he provided a laundry list of historical data that he believes resides in Salesforce.  Savvas objects to this so-called "open audit of all of Defendant's Salesforce data" as irrelevant and disproportionate to the needs of the case.  (ECF 65, at 4-5.)  Savvas holds firm that it has "produced all Salesforce data related to Plaintiff, including all of Plaintiff's phone calls, e-mails, and visits with the respective school districts."  (ECF 65, at 4; *see also* ECF 65-2, at 2 (July 24 email contending Savvas "has produced all responsive documents in its possession,

---

[3] The motion to compel sometimes references six documents and other times references six pages of documents.  The court refers herein to six documents.

custody, and/or control" and it is "not withholding any responsive documents").)  Savvas does not

state whether it is withholding any documents based on relevancy or other objections.

Savvas's response provides no explanation as to why the requested Salesforce data is no

longer there.  Based on the record currently before the court, it appears unlikely that the six

documents Savvas produced is the entirety of the responsive information from Salesforce.

Willmore herself submitted a declaration in support of her motion to compel in which she describes

the types of data she knows are maintained within Salesforce and that Savvas should have been

able to retrieve from Salesforce.  (ECF 63-2.)  Willmore says she used Salesforce to manage,

monitor, and service the Derby and Blue Valley School District accounts, and that Salesforce files

"contained numerous years' worth of sales data, licensing information, pricing data, shipping

records, backorder information, dates of shipment, contents of shipments" and "[d]ozens, if not

hundreds, of notes" for these accounts.  (ECF 63-2 ¶¶ 6-10.)  Willmore also says that Salesforce

contained information regarding issues or complaints made by the school districts, which were

assigned case numbers, and detailed data (including internal communications among various

departments and employees at Savvas) as to how each of the reports or complaints were resolved.

(ECF 63-2 ¶ 10.)  She explains that customer data kept in Salesforce "can be accessed for years

into the future."  (ECF 63-2 ¶ 4.)  Willmore further attests that the six Salesforce documents

produced in response to RFP No. 4, which she has reviewed, "cannot possibly be all" responsive

Salesforce documents because she "personally know[s] that the number of documents maintained"

in Salesforce exceeds this number and that she "personally created" more than these six documents

in Salesforce for the two school districts.  (ECF 63-2 ¶¶ 11-12.)  She also questions Savvas's RFP

No. 4 production because she reviewed documents produced by Savvas in response to RFP No. 7

that she says were clearly retrieved from Salesforce—thus "showing that Defendant can and has

retrieved documents from Sales Force, they are just not doing it for the Derby and Blue Valley districts or, alternatively, the data for those two accounts has been lost or destroyed."  (ECF 63-2 ¶ 13.)

Savvas does not explain this discrepancy between Savvas's position that it has produced all documents responsive to RFP No. 4 and Willmore's explanation that she knows there are more responsive documents maintained in Salesforce.  The only explanation the court can muster is that Savvas limited the scope of what it deems "responsive" documents to the following:

> Defendant produced all Salesforce data *related to Plaintiff*, including all of Plaintiff's phone calls, e-mails, and visits with the respective school districts.  After all, the only reason why Salesforce data is at issue in this case is Defendant concluded that Plaintiff falsified her Salesforce entries by logging meetings with Derby Public Schools in March and April 2021 that did not occur.

(ECF 65, at 4 (emphasis added).)  Savvas points out that, early in the case, it "produced pertinent e-mails to Plaintiff and provided her access to the native files of these e-mails that very clearly evidenced an intent to terminate Plaintiff prior to any act of alleged insubordination at issue in this case."  (ECF 65, at 1-2.)   Likewise, Savvas's response to Willmore's motion for leave to supplement her motion-to-compel briefing states that Savvas "has always maintained that it relied on Salesforce records to support the decision to terminate Plaintiff, which is why it already produced those records to Plaintiff."  (ECF 101, at 1.)[4]  In other words, it appears that Savvas has produced all Salesforce documents that it relies on or intends to use at trial to support its decision

---

[4] Willmore also filed a Motion for Leave to File Attached Supplement in Support of Her Motion to Compel after briefing closed.  (ECF 97.)  The motion asks the court to consider recent deposition testimony of Savvas's Rule 30(b)(6) witness, which Willmore contends supports her motion to compel documents responsive to RFP No. 4.  The court denies this motion as moot because the court finds this aspect of Willmore's motion to compel should be granted without regard to the Rule 30(b)(6) testimony.

to terminate Willmore.  Savvas has then used this unilateral, self-serving narrowing of the request's scope to claim it has no further responsive documents to produce.

The problem with this logic is that documents "responsive" to RFP No. 4 are not just Salesforce records related to Willmore, such as her own entries for those accounts, that support Savvas's decision to terminate her.  Rather, RFP No. 4 seeks documents "*related to Plaintiff's service and business interactions* -- which occurred during the last 5 years of Plaintiff's employment at SAVVAS -- with and to the Derby School District and/or the Blue Valley School District."  (ECF 63-1, at 1 (emphasis added).)  Willmore became the Sales Manager for the State of Kansas in 2014, which presumably included those school districts, so she was their account representative for most of her last five years at Savvas (until Savvas removed her from servicing those accounts).  As a result, anything relating to her "service and business interactions" with those school districts is responsive, not just the few select interactions that Savvas claims support its decision to terminate her.  That is presumably why the parties agreed early on that the scope of RFP No. 4 was limited to Salesforce records for the Derby and Blue Valley accounts.  Willmore has met her burden to establish those documents are relevant to her claims, as they may bear on Savvas's reasons for terminating her employment and could lead to other matter that could bear on whether Savvas's reasons were pretext for age and sex discrimination.  Furthermore, as Willmore explained in pre-motion meet-and-confer correspondence, she seeks documents that she could use to counter Savvas's claims that "there were specific mistakes made by Brenda regarding Derby and Blue Valley" and that "the company was slated to lose millions of dollars if a change wasn't made."  (ECF 65-2, at 1.)

The court rejects Savvas's argument that Willmore is simply "casting a wide net for documents coupled with 'gotcha' litigation tactics . . . to drive up the cost of litigation and muddy

the water surrounding Plaintiff's termination" instead of focusing on the "appropriate inquiry," which Savvas contends is "whether it honestly believed those reasons and acted in good faith upon those beliefs." (ECF 65, at 2.)  As the cases Savvas cites demonstrate,[5] that inquiry is appropriate for deciding whether Savvas is entitled to summary judgment, but not whether Willmore is entitled to discovery.  In discovery matters, "[r]elevance is broadly construed, and a request for discovery should be allowed unless it is clear that the information sought can have no possible bearing on the claim or defense of a party." *Booth*, 2011 WL 2008284, at *6.  Here, under the liberal discovery standards, the court easily finds the documents Willmore seeks are relevant and Savvas has not met its burden to show that RFP No. 4 is objectionable.  The request is not vague or ambiguous; it is not overbroad as narrowed by the parties to Salesforce records regarding the two school districts; and Savvas does not explain the burden of producing the documents.  Willmore is therefore entitled to the documents and information she seeks in RFP No. 4.

Accordingly, Willmore's motion to compel is granted as to RFP No. 4.  The court orders Savvas, at its option, to do either or both of the following by **October 3, 2023**: (1) produce all information from Salesforce responsive to RFP No. 4; or (2) allow Willmore to inspect the Salesforce database.  *See* Fed. R. Civ. P. 34(b)(2)(B) (allowing a responding party to either produce copies of documents or ESI or permit inspection).  Furthermore, because the court is concerned about Savvas's elusive description as to the scope of what it has produced (*e.g.*, only six documents from Salesforce when Willmore says she knows there are many more), the court further orders Savvas, to the extent that it elects option (1), to file a certification that describes the steps Savvas took to search for and produce all Salesforce documents responsive to RFP No. 4.  The certification

---

[5] Savvas cites *Young v. Dillon Cos.*, 468 F.3d 1243, 1250 (10th Cir. 2006), and *Rivera v. City and County of Denver*, 365 F.3d 912, 924-25 (10th Cir. 2004).

must be signed by both a party representative of Savvas under penalty of perjury and by counsel of record for Savvas.

### B. Willmore's Motion to Compel Is Denied as to RFP No. 7.

RFP No. 7 requests that Savvas run "electronic searches" structured to identify documents and ESI of five custodians during a certain time period using the search terms set forth in the request.[6] (ECF 63-1, at 2.) Savvas initially objected to the request on grounds of overbreadth, relevance, and proportionality, but agreed to "supplement" its response. After meeting and conferring, Savvas agreed to run Willmore's requested searches. As explained above, Savvas produced documents resulting from the searches, but then discovered it had run the searches incorrectly, so it ran the documents through a second search (with all agreed-upon custodians) and found that the resulting hits included irrelevant and nonresponsive documents. Savvas withheld these documents from production based on relevance, overbreadth, and proportionality objections (as well as an attorney-client privilege objection). Savvas's second supplemental response to RFP No. 7 identifies the categories of documents being withheld: "documents concerning company-wide furloughs in response to the COVID-19 pandemic, sales and/or employee bonus information not related to Plaintiff, reporting information regarding job openings not related to Plaintiff's position, payroll documents detailing company-wide salaries, [and] documents relating to other employees and customers not in Kansas." (ECF 63-1, at 3.) At the discovery conference on July

---

[6] The search terms are: "Brenda" OR "Willmore" OR "Wilmore" AND "Derby" OR "usd260" OR "Blue Valley" OR "bluevalley" OR "age" OR "old" OR "retirement" OR "woman" OR "female" OR terminate OR terminated OR fired OR fire.

The court expresses no opinion on the propriety of this type of request for production at this procedural juncture (*i.e.*, where the propounding party specifies search parameters) because Savvas has not lodged any objection to the form of RFP No. 7.

18, Savvas explained that the hits on these irrelevant documents were due largely to the breadth of the search terms and the fact that one of the custodians was Savvas's CEO.  (ECF 64, at 14-15.)

Willmore now seeks to compel the production of all documents that hit on the parties' agreed-upon search terms without further relevance review by Savvas because Willmore characterizes all resulting hits as presumptively relevant and responsive.  (ECF 63, at 11-14.) Willmore argues Savvas should not be allowed to cull the resulting collection of documents for relevance, as this would defeat "the whole principle behind agreed search terms . . . and invites abuse by the responding party."  (ECF 63, at 13.)  Willmore contends it is "fundamentally unfair" at this late stage of discovery for Savvas to "withhold[] documents based on relevance without having properly objected on the grounds of relevance and without producing a detailed log as to exactly what is being withheld."  (ECF 63, at 13-14.)  Willmore further argues that Savvas waived any relevance objection because the parties agreed to those search terms and Savvas's supplemental responses indicated it would be producing all non-privileged documents that hit on those terms.  (ECF 63, at 13; ECF 63-1 at 3.)

Savvas disputes that it waived any relevancy objection.  Savvas argues that its agreement to work with Willmore to run search terms does not waive its relevancy objections and points to federal court decisions finding no waiver in such situations.  (ECF 65, at 6-7.)  Savvas also rejects Willmore's request that Savvas provide a "relevancy log" describing the reason Savvas is withholding each document as irrelevant.  (ECF 65, at 8.)

The court finds that Savvas timely and properly lodged a relevancy objection, and the court rejects Willmore's demand that Savvas produce all resulting hits based on Willmore's arguments that all hits are presumptively relevant and responsive.  Willmore cannot simply bypass a relevance review by requesting that Savvas run broad search terms and produce all documents that hit on

those terms.  After all, the scope of discovery under Federal Rule of Civil Procedure 26(b)(1) begins with relevance, so Willmore is not entitled to discovery that is not relevant.  Savvas is therefore entitled to cull for relevance.  *See, e.g.*, *Palmer v. Cognizant Tech. Sols. Corp.*, No. CV-17-6848, 2021 WL 3145982, at \*9 (C.D. Cal. July 9, 2021) ("The Court will not compel defendants to produce any document simply because it contains a search term . . . whether or not it is relevant and proportional to the needs of the action."); *FlowRider Surf, Ltd. v. Pac. Surf Designs, Inc*., No. 15CV1879, 2016 WL 6522807, at \*8 (S.D. Cal. Nov. 3, 2016) (denying the defendant's motion to compel plaintiffs to produce all documents that "hit" on the parties' ESI search terms regardless of relevance) (overruled on other grounds); *BancPass, Inc. v. Highway Toll Admin., LLC*, No. 14-CV-1062, 2016 WL 4031417, at \*3 (W.D. Tex. July 26, 2016) (holding the parties' agreement to run search terms was a way to simplify and limit the scope of production, but it did not obligate the parties to produce non-responsive documents, and denying motion to compel because there was "no reason to believe that [the defendant] ha[d] withheld documents it was obligated to produce").

Furthermore, Savvas did not waive its relevance, overbreadth, and proportionality objections.  Savvas lodged these objections initially, and its subsequent agreement to run a search using the parties' agreed-upon terms does not constitute acquiescence to produce all resulting documents.  *See, e.g.*, *SinglePoint Direct Solar LLC v. Solar Integrated Roofing Corp*., No. CV-21-01076, 2023 WL 2585296, at \*3 (D. Ariz. Mar. 21, 2023) (stating that "agreeing to run search terms does not waive relevance objections to the documents that are responsive to the search terms," and finding that the plaintiff "may review all documents that are 'hits' on a search term for relevance and withhold irrelevant documents"); *FlowRider Surf,* 2016 WL 6522807, at \*8 ("The Court finds that Plaintiffs have not waved their relevance and over breadth objections.  Plaintiffs'

agreement to run a search using the parties' agreed-upon terms does not constitute Plaintiffs' acquiescence to produce all resulting documents."). Likewise, Savvas's agreement to re-run the searches a second time (after discovering they were run incorrectly the first time) is not an agreement to produce all resulting documents. In fact, it was this second search—which led to the second supplemental response—that turned up the irrelevant documents from the Savvas CEO's collection. Savvas did not waive its relevancy objections under these circumstances.

Having found that Savvas properly lodged a relevancy objection and did not waive it, the court finds the documents Willmore seeks to compel are not relevant under Rule 26(b)(1). These documents were the result of extremely broad search terms—including terms such as "Brenda" OR "Willmore" OR "Wilmore" within the same paragraph as terms such as "age" OR "old" OR "retirement" OR "woman" OR "female" OR terminate OR terminated OR fired OR fire—as applied to a CEO custodian who received high-level reports and company-wide information about employee salary, bonus, furlough status, job openings for positions unrelated to Willmore's position, and other documents unrelated to Savvas employees and customers in Kansas. These documents have no bearing on the claims and defenses in this case. Willmore argues these documents may be relevant to "the question of whether males and younger employees were viewed more favorably and paid more by Defendant." (ECF 73, at 3-4; *see also* ECF 64, Hr'g Tr. at 16.) But, as the court pointed out at a discovery conference, disparate pay is not an issue here. (ECF 64, Hr'g Tr. at 16.) Rather, Willmore claims that Savvas discriminated against her based on sex and age when it terminated her employment as the Sales Manager for the State of Kansas.

Moreover, Savvas has shown good cause for withholding the documents as irrelevant. And, consistent with Fed. R. Civ. P. 34(b)(2)(C), Savvas's second supplemental response to RFP No. 7 expressly notified Willmore what categories of documents it is withholding based on its

objection: "documents concerning company-wide furloughs in response to the COVID-19 pandemic, sales and/or employee bonus information not related to Plaintiff, reporting information regarding job openings not related to Plaintiff's position, payroll documents detailing company-wide salaries, [and] documents relating to other employees and customers not in Kansas."  (ECF 63-1, at 3.)   The court is therefore unpersuaded by Willmore's "unfairness" argument.

The court also rejects Willmore's request to require Savvas to provide a relevancy log for the documents it is withholding.  In support, Willmore relies on a motion hearing transcript in the case of *Russell v. Kiewit Energy Group, Inc*. in which U.S. District Court Judge Kathryn H. Vratil ordered the defendant to produce all documents responsive to a search that hit on the plaintiff's name and/or to provide a relevance log for otherwise responsive documents it was withholding as not relevant.  (ECF 63-5.)   Willmore misconstrues Judge Vratil's order in *Russell* as somehow applying with equal force to this case.  It does not.  For one, *Russell* is a district court decision that is not binding precedent.  *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." (citation omitted)).  Furthermore, the Federal Rules contain no requirement for a "relevance log," and Judge Vratil's decision ordering such a log in *Russell* is distinguishable from the facts here.  In *Russell*, the defendant did not explain the criteria it had applied to withhold documents based on a lack of relevance.  (ECF 63-5, Hr'g Tr. at 32-34.)  That is presumably why she gave the defendant the opportunity to provide a "relevancy log"—essentially, to articulate its relevancy objections for withholding documents that were otherwise responsive to the search criteria.  Unlike the defendant in *Russell*, Savvas has already provided that explanation here.  After Savvas went back and ran the searches the second time, Savvas described the subsets of documents it is withholding—both to Willmore and to the

court, and also in its second supplemental response to RFP No. 7.  So, unlike in *Russell*, the court here already has what it needs from Savvas to determine (as set forth above) that the categories of documents Savvas is withholding are not relevant.

For all of these reasons, the court denies Willmore's motion to the extent it asks the court to overrule Savvas's relevancy objection and to compel Willmore to produce all documents that hit on the parties' agreed-upon search terms, regardless of relevance.  Accordingly, the court denies Willmore's motion to compel Savvas to produce further documents responsive to RFP No. 7.

## IV.   <u>SANCTIONS</u>

Willmore's motion to compel also seeks attorneys' fees incurred in making this motion. The court denies this aspect of Willmore's motion because the court is granting Willmore's motion to compel in part and denying it in part.

Also pending before the court is Savvas's Motion for Sanctions.  (ECF 72.)  By way of this motion, Savvas asks the court to dismiss Willmore's case.  The motion is denied for multiple reasons, the most obvious of which is that dismissal is an extraordinary sanction that clearly is not warranted based on the present record.  Indeed, Savvas does not even mention (much less address) governing Tenth Circuit precedent setting the applicable legal standard for dismissal as a sanction. Second, both parties are equally culpable for any debacle concerning their shared use of the DISCO database and the resulting lack of clarity.  Third, Savvas's generalized complaints about Willmore's "costly and abusive discovery tactics" are premised on the issues raised in Willmore's motion to compel, which the court is granting in part and denying in part.

Savvas's motion also seeks, in the alternative, evidentiary sanctions in the form of clawing back documents bates numbered F000133-F133198 and excluding any documents improperly obtained by Willmore from any future filing or proceeding in this case.  In other words, Savvas

essentially seeks to clawback its entire first production in response to RFP No. 7, which Savvas has since replaced with a corrected production.  Savvas's attempt to lay blame on Willmore for the debacle surrounding its first production is not well taken.  Savvas significantly delayed in making that first production, placing Willmore's counsel in a time crunch to prepare for then-upcoming depositions.  Then, when Savvas finally made that production, it botched it so badly that it was virtually unusable and later had to be entirely redone.  But before Savvas corrected the production, it first tried to rectify the botched production via the quick fix of granting Willmore's counsel access to a shared database that Savvas did not properly ensure would function in a way that would protect its privileged material.  Whether Willmore improperly accessed a handful of documents that may (or may not) have been privileged is disputed and impossible for the court to resolve based on the parties' vague, underdeveloped, and accusatory arguments on this point. Regardless, Savvas has not met its burden to show that an appropriate remedy would involve the claw-back of the entire 130,000+ page production rather than selected documents, and it appears this issue may be obsolete since Savvas rectified the problems by re-running the searches in response to RFP No. 7 so that Willmore has had the replacement production to use.  To the extent that Savvas still has concerns about Willmore retaining specific documents, Savvas is required to follow the clawback procedure set forth in Paragraph 18 of the Protective Order.  (ECF 19.)

**IT IS THERFORE ORDERED** that Plaintiff's First Motion to Compel (ECF 63) is granted in part insofar as Savvas is ordered to produce documents responsive to RFP No. 4, as narrowed by the parties to all Salesforce documents regarding the Derby and Blue Valley school

districts during the five years leading up to Willmore's termination.  The motion is otherwise denied.

**IT IS FURTHER ORDERED** that Savvas's Motion for Sanctions (ECF 72) is denied.

**IT IS FURTHER ORDERED** that Willmore's Motion for Leave to File Attached Supplement in Support of Her Motion to Compel (ECF 97) is denied.

**IT IS SO ORDERED.**

Dated September 19, 2023, at Kansas City, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge
