**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

BRENDA WILLMORE,

        Plaintiff,

v.

SAVVAS LEARNING COMPANY LLC,

        Defendant.

Case No. 22-2352-TC-ADM

<u>**MEMORANDUM & ORDER NUNC PRO TUNC**</u>

      This is an employment discrimination case brought by plaintiff Brenda Willmore ("Willmore") against her former employer, Savvas Learning Company LLC ("Savvas"). This case is now before the court on two remaining discovery matters. The first is Savvas's Motion to Reconsider Its Motion to Quash the Deposition of Debi Debiak, Esq., or in the Alternative, Motion for a Protective Order. (ECF 104.) By way of this motion, Savvas asks the court to reconsider its ruling denying Savvas's motion to quash the deposition of Debiak, who is in-house counsel at Savvas, and denying its alternative motion for a protective order limiting the scope of Debiak's deposition. As discussed below, Savvas's motion is denied to the extent that Savvas seeks reconsideration of the court's order denying Savvas's motion to quash Debiak's deposition, but the court grants Savvas's alternative motion for a protective order under the terms set forth below.

      The second matter now before the court is Savvas's Motion to Strike Plaintiff's Supplemental Rule 26 Disclosures and to Exclude Untimely Disclosures from Evidence. (ECF 103.) In this motion, Savvas moves the court to exclude Willmore's untimely supplemental Rule

1

26(a) disclosures from use at trial or, alternatively, order Willmore's deposition be reopened for questioning regarding these late disclosures, with all costs incurred in addressing this discovery dispute assessed to Willmore.  For the reasons discussed below, the court grants Savvas's motion and directs Willmore to elect the sanction—either (1) Willmore is precluded from using the documents at trial, or (2) Savvas is allowed additional deposition time to question Willmore about the documents and Willmore must reimburse Savvas's costs for the continued deposition (e.g., court reporter, transcript(s), and videographer, if used at first deposition).

## I.   MOTION TO RECONSIDER CONCERNING DEBIAK DEPOSITION

### A.   Background

The facts of this case and the parties' discovery disputes are well documented in the court's orders following discovery conferences and on discovery motions, so the court will not repeat them here.  (ECF 38, 49, 54, 56, 86, 93, 98, 111.)  Suffice it to say that what should be a relatively straightforward employment case has been mired in discovery problems, one of which was reflected in Savvas's Motion to Quash the Deposition of Debi Debiak, Esq., or In the Alternative, Motion for a Protective Order.  (ECF 88.)  The motion was ostensibly precipitated by Willmore filing a notice on August 24 to take Debiak's deposition on August 29.  (ECF 84.)  Savvas responded the next day by filing a motion to quash her deposition or, alternatively, limiting the scope of the deposition.  (ECF 88.)

Because time appeared to be of the essence, the court entered an order on August 28 without awaiting a response from Willmore[1] in which the court denied the motion on three

_____

[1] Willmore filed a motion to strike Savvas's motion to quash rather than filing a response. (ECF 89.)  This was the second time Willmore filed an improper motion to strike rather than simply filing a proper response to a motion.  The first time, the court denied the motion to strike and

grounds.  (ECF 93.)  First, it was immediately apparent to the court that Savvas did not file the motion within the 30-day deadline set forth set forth in D. Kan. Rule 37.1(c).  The court noted that Willmore first served a notice on July 23 to take Debiak's deposition on July 26 (ECF 59),[2] and there was no evidence that Savvas attempted to meet and confer with Willmore about any objections to producing Debiak for deposition until the evening of August 25—after it received the second deposition notice.  This was beyond the 30-day deadline and Savvas had not demonstrated that it was diligent in raising and pursuing its objections to the deposition within 30 days after Willmore served the first deposition notice on July 23.  Second, the court denied the motion because it did not establish that Savvas met and conferred with opposing counsel as required by D. Kan. Rule 37.2.  Rather, the motion said only that Savvas's counsel tried to call Willmore's counsel the evening of Friday, August 25, which would have been shortly before Savvas filed the motion at 8:37 p.m. that evening.  Third, Savvas did not request a discovery conference before filing the motion, as required by D. Kan. Rule 37.1(a).  The court further explained that although it understood Savvas filed the motion when it did in order to meet the 48-hour deadline in D. Kan. R. 26.1(b)(2)(B) necessary to trigger an automatic stay of the deposition, that still did not allow Savvas to bypass the above local rule requirements.  The court went on to clarify that it was "not expressing any opinion as to whether it would have allowed Debiak's deposition to proceed if Savvas had properly and timely raised the issue."  (ECF 93, at 3.)  The

---

instructed Willmore to raise any arguments in a response rather than filing a separate motion to strike.  (ECF 77.)  So, when Willmore once again filed an improper motion to strike rather than simply filing a response to Savvas's motion to quash Debiak's deposition, the court once again denied Willmore's motion to strike and again reminded Willmore that "the proper procedure to assert such arguments is not in a motion to strike, but rather in responding to the motion."  (ECF 92.)

[2] Debiak's originally-scheduled deposition was later postponed.

court offered one further observation, making it clear that Savvas could proceed with the deposition while preserving any legitimate privilege claims:

> [I]t is not as if in-house counsel can never be deposed. Lawyers are sometimes deposed and, when that occurs, it is up to the party producing the deponent to take the steps necessary to preserve legitimate claims of privilege and/or work-product. This order denying Savvas's motion in no way forecloses Savvas from doing the same.

(ECF 93, at 3.)

The next day, Savvas requested a discovery conference, which the court convened on August 31.  (ECF 95, 96, 98, 99.)  At the conference, Savvas stated that it intended to file a motion to reconsider the court's ruling on its motion to quash Debiak's deposition, presumably under the rationale that Savvas had by that time rectified its earlier failures to comply with the local rule requirements above.  (ECF 98.)  Savvas then filed the current motion.  (ECF 104.)

**B.      Savvas's Motion to Reconsider the Court's Order Denying Savvas's Motion to Quash Debiak's Deposition**

A motion for reconsideration must be based on (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice.  D. KAN. RULE 7.3.  The decision whether to grant or deny a motion for reconsideration is committed to the court's discretion.  *Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1235-36 (10th Cir. 2001).

Savvas's motion does not identify any intervening change in controlling law, new evidence, or the need to correct clear error.   Instead, Savvas generally reiterates the same arguments made in its original motion but this time adds some detail and case law support.  (ECF 104 ¶¶ 2-7.)  Savvas's rehash of its previous arguments is insufficient to warrant reconsideration. For the same reasons stated in the court's prior order on Savvas's motion to quash (ECF 93), the

4

court finds Savvas failed to timely file its motion within the 30-day deadline set forth in D. Kan. Rule 37.1(c); failed to adequately meet and confer with Willmore before filing the motion, as required by D. Kan. Rule 37.2; and failed to first request a discovery conference before filing its motion to quash, as required by D. Kan. Rule 37.1(a).   Nothing in Savvas's motion for reconsideration changes the court's analysis of those issues.

If anything, the parties' briefing on reconsideration only demonstrates that Savvas's noncompliance with these rules was even more egregious than the court fully appreciated when it previously denied Savvas's motion to quash.  Apparently, Willmore first sent Savvas a request for deposition dates for Debiak on April 19, to which Savvas responded on May 4 that it was "working on dates."  (ECF 108-1.)  On June 14, Savvas offered Willmore dates for Debiak's deposition on July 26, 27, or 28.  (*Id.*)  Also on June 14, the parties filed a Joint Motion to Amend Scheduling Order setting forth depositions that remained to be taken, including "Debi Debiak (Defendant's in-house counsel; involved in Plaintiff's termination): July 27, 2023."  (ECF 40, at 3.)  On July 18, a personal conflict arose for Willmore's counsel, so he reached out to Savvas's counsel to reschedule Debiak's deposition.  (ECF 108-1, at 4.)  It appears the issue of rescheduling Debiak's deposition then languished until Willmore once again filed the notice on August 24—this time, to take her deposition on August 29. (ECF 84.) During the entire time period of more than four months the parties were discussing Debiak's deposition, Savvas never once objected to producing Debiak for deposition until August 25.  This confirms that the court correctly denied Savvas's original motion to quash Debiak's deposition for failure to comply with the local rule requirements set forth above.

Savvas nevertheless resorts to asking the court to reconsider its ruling "because allowing [Debiak's] deposition would be manifestly unjust."  (ECF 104 ¶ 8.)  "The District of Kansas has applied a high standard to claims of manifest injustice, requiring that the injustice be apparent to the point of being indisputable." *Doe P.M. v. United States*, No. 16-2315-DDC, 2021 WL 425806, at *1 (D. Kan. Feb. 8, 2021) (quotation omitted).  There is nothing manifestly unjust about requiring Savvas to meet and confer with opposing counsel, arrange for a telephone conference with the judge and opposing counsel, and timely file a motion to quash Debiak's deposition under the circumstances.  Savvas has known about Willmore's desire to take Debiak's deposition since April, yet it waited until the end of August to first object to the deposition.  The local 30-day rule was designed to combat such last-minute discovery disputes that engender delays and thereby undermine the "just, speedy, and inexpensive" determination of this action.  Fed. R. Civ. P. 1.  The court is likewise unpersuaded by Savvas's argument that it ultimately "did meaningfully confer with Plaintiff on August 28 and had a discovery conference with the Court on August 31" (ECF 104 ¶ 7)—as if Savvas somehow rectified the deficiencies in its original motion.  Savvas chose to file its original motion prematurely, without complying with the local-rule requirements.  A motion to reconsider is not a second opportunity for the losing party to make its strongest case, to rehash arguments, or to dress up arguments that previously failed.  *See Jenny Yoo Collection, Inc. v. Essense of Australia, Inc.*, No. 17-2666-JAR-GEB, 2019 WL 3453805, at *4 (D. Kan. July 31, 2019).

Savvas also asks the court "to use its discretion to prevent … manifest injustice" because the "deposition questioning of Ms. Debiak will almost certainly delve into matters Defendant claims as protected by the attorney-client privilege."  (ECF 104, at 3; ECF 110, at 1.)  But that

reasoning only makes Savvas's four-month delay all-the-more egregious.  Debiak's involvement in Willmore's termination has long been a part of the issues in the case.  In fact, Debiak's name first came up in a discovery conference with the court on July 18 during a discussion about whether Savvas's General Counsel Andy Yoo should be a document custodian for RFP No. 7.  Savvas argued that Yoo's documents did not need to be searched because Debiak was the in-house counsel involved in the decision to terminate Willmore's employment, and Savvas had already agreed to search and produce her emails and documents to the extent they are not privileged.  (ECF 64, at 3-6.)  During the conference, Savvas's counsel explained that:

> the communications leading up to plaintiff's termination . . . involve Mica Lesser, James Lippe, Sheri Jolcover, and then they would request advice from Debi Debiak, who then reports to Andy Yoo. So all of the communications regarding plaintiff's termination were handled by Debiak. The e-mails involving Andy Yoo were Debiak reporting to Andy Yoo the legal advice that was given to the business units.

(ECF 64, at 11.)  So Savvas was aware of Debiak's involvement, at least as a legal advisor and potentially also as a business advisor, but still agreed to make her a custodian and produce her nonprivileged files that hit on the search terms set forth in RFP No. 7.  If Debiak's deposition was going to be complicated by her status as in-house counsel, it was incumbent upon Savvas to have raised this objection with Willmore and the court months ago.  The 30-day rule has been a staple in the District of Kansas's discovery procedures for decades.  There is nothing manifestly unjust about holding parties to it.

In sum, Savvas has not established any valid grounds for reconsideration.  Accordingly, the court denies Savvas's motion for reconsideration of the court's order denying Savvas's motion to quash Debiak's deposition.

### C.    Savvas's Alternative Motion for a Protective Order

The court turns next to the alternative relief requested by Savvas in which it seeks "a Protective Order limiting any deposition of Ms. Debiak to at most three hours." (ECF 104, at 7.) Although styled as part of Savvas's motion to reconsider, it does not qualify as such because Savvas is not seeking the same alternative form of relief that it previously sought in its original motion for protective order. When Savvas originally moved to quash Debiak's deposition, the alternative form of relief Savvas sought was a protective order limiting the scope of the deposition to "only to those narrow topics that this Court finds are crucial to Plaintiff's case, that cannot be obtained by Plaintiff through other avenues, and which are nonprivileged." (ECF 88, at 6.) Now, instead of seeking to limit the scope of the deposition, Savvas seeks to put a shortened time limit on Debiak's deposition. This aspect of Savvas's current motion is therefore not a motion to reconsider and the standards governing reconsideration do not apply.

### 1.    Compliance With the 30-Day Deadline in D. Kan. Rule 37.1(c)

Although the court denies Savvas's motion to quash Debiak's deposition altogether for failure to comply with the 30-day deadline in D. Kan. Rule 37.1(c) (as explained above), the court reaches a different conclusion insofar as Savvas now seeks to put a shortened time limit on the deposition. Savvas argues its current motion is within the 30-day deadline because it learned "new information about Plaintiff's strategy" during depositions taken in August and September—specifically, during the depositions of James Lippe (August 15), Allie Tatrow (August 23), Claravon Mathews (August 23), Sheri Jolcover (August 30), and Mica Lesser (September 5). Savvas argues, "These depositions proved longer, more contentious, and more duplicative than Defendant expected. Plaintiff's counsel engaged in tactics to prolong the depositions to a full

seven hours (excluding breaks), including angry outbursts and repetitive questions." (ECF 104, at 2.) Savvas therefore argues that Debiak will be forced to sit through an all-day deposition that will be contentious, harassing, and duplicative. (ECF 104, at 2-3.)

Although the court is not necessarily persuaded that these depositions were quite as abusive as Savvas now portrays them, the court understands Savvas's concerns. The court received multiple emails and telephone calls from counsel during depositions of Savvas witnesses. As but one example, disputes arose during Lippe's deposition on August 15 in which the parties repeatedly contacted the court about Savvas's complaints that Willmore's counsel was harassing Lippe and the deposition went over the 7-hour time limit, and Willmore's complaint that Savvas's counsel instructed the witness not to answer questions even though privilege was not asserted. (ECF 86.) In preparation for a discovery conference about the parties' areas of disagreement and whether Lippe's deposition should be terminated or reopened, the court reviewed most of the deposition transcript and provided the parties with feedback as to how both parties' counsel should handle similar types of disagreements in future depositions. That feedback included the court's concerns about Willmore's counsel's lack of courtesy and professionalism towards the witness. And now it appears that Willmore's counsel intends to use Debiak's deposition to try to invade the attorney-client privilege based on a misunderstanding of privilege principles (as discussed below).

In sum, Savvas's request to place time limits on Debiak's deposition is designed to address its concern about what Savvas perceives as Willmore's counsel's abusive deposition tactics. The court credits Savvas's explanation that it only first started to learn about these concerns as Willmore proceeded with depositions in mid- to late-August. Savvas filed the current motion on September 13, 2023. Based on this timing, the court finds that Savvas filed its motion for a

protective order to place time limits on Debiak's deposition within 30 days after Savvas "knew or reasonably should have known" about the contentious nature of the depositions and the "annoyance, embarrassment, oppression, or undue burden" to which Debiak will be subjected during her deposition.  Savvas has therefore shown that it made its request for a protective order to shorten the time limit on Debiak's deposition within the 30-day rule.   *See* D. KAN. R. 37.1(c); FED. R. CIV. P. 26(c)(1).

### 2.      Protective Order Placing Time Limit on Debiak's Deposition

Savvas asks the court to shorten the time limit on Debiak's deposition on the grounds that she is "opposing counsel."  (ECF 104, at 4.)  Savvas argues "[t]his Court often prohibits" such depositions to prevent "delay, disruption of the case, harassment, and unnecessary distractions into collateral matters" unless "(1) no other means exist to obtain the information except to depose opposing counsel;  (2) the information sought is relevant and nonprivileged;  and (3) the information is crucial to the preparation of the case."  (*Id.*)  Although Savvas's arguments may summarize some case law from this district, they do not fully and accurately articulate the governing legal standard dictated by Tenth Circuit precedent.

That legal standard stems from the case *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986).  In *Shelton*, the Eighth Circuit held the district court committed reversible error by first allowing the deposition of the attorney in the defendant's litigation department who was "assigned specifically to the case at bar as [defendant's] supervising in-house counsel"; then, by entering default judgment against the defendant as a sanction for the attorney declining to answer certain questions on the grounds of attorney-client privilege or the work-product doctrine.  *Id.* at 1325-26.  Apparently at that time (some 37 years ago), "the practice of taking the deposition of

opposing counsel ha[d] become an increasingly popular vehicle of discovery." *Id.* at 1327.  The court explained the reasons why this was "a negative development in the area of litigation, and one that should be employed only in limited circumstances." *Id.*  The court recognized that "opposing trial counsel" is not absolutely immune from being deposed and that "circumstances may arise in which the court should order the taking of opposing counsel's deposition," but that those circumstances "should be limited to where the party seeking to take the deposition has shown that (1) no other means exist to obtain the information than to depose opposing counsel …; (2) the information sought is relevant and non privileged; and (3) the information is crucial to the preparation of the case." *Id.*

The Eighth Circuit's reasoning in *Shelton* found its way into Tenth Circuit precedent in *Boughton v. Cotter Corporation*, 65 F.3d 823, 829-30 (10th Cir. 1995).  In *Boughton*, the Tenth Circuit held the district court did not abuse its discretion by issuing a protective order that prohibited the plaintiffs from deposing defendants' outside counsel.  *Id.*  In doing so, the Tenth Circuit first found that the record supported treating the attorney, McGrath, as an attorney for the defendants where McGrath operated solely as an attorney, made no operating decisions, and was not authorized to make commitments on behalf of the company without prior approval from management.  *Id.* at 829.  The court noted that "the critical issue is . . . whether the trial court abused its discretion in attempting to protect the defendants from an unnecessary burden" and, viewed in that light, the Tenth Circuit approved of the criteria set forth in *Shelton*.  *Id.* at 830.  However, the court stated that it was making a "more limited holding that ordinarily the trial court at least has the *discretion* under Rule 26(c) to issue a protective order against the deposition of opposing counsel when any one or more of the three *Shelton* criteria for deposition listed above

are *not* met." *Id.* (emphasis in original).  The Tenth Circuit specifically noted that it was not reaching "the issue whether a protective order or other denial of discovery in such a case is mandatory," but instead was merely affirming "the trial judge's decision to issue a protective order preventing the questioning of a party's counsel as being at least a reasonable exercise of discretion under Rule 26(c)."  *Id.* at 830 n.9; *see also Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1111-12 (10th Cir. 2001) (finding no error in district court's decision refusing to allow plaintiff to depose defendant's corporate counsel where the parties agreed the *Shelton* factors applied and the plaintiff did not show the information sought was unavailable elsewhere).

As a result, the applicable legal standard here is not, as Savvas suggests, governed by a simple application of the *Shelton* factors.  Rather, it is more accurate to begin with the proposition that nothing in the Federal Rules of Civil Procedure categorically prohibits the deposition of a party's attorney.  *See* Fed. R. Civ. P. 30(a)(1) ("A party may . . . depose *any person* . . . ." (emphasis added).)  However, the court may find good cause to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c)(1).  In evaluating whether such good cause exists to prohibit the deposition of opposing counsel, the court recognizes that such depositions are often disfavored because of the "potential for abuse in deposing an opponent's attorney by encouraging delay, disruption of the case, harassment, and unnecessary distractions into collateral matters."  *Roadbuilders Mach. & Supply Co. v. Sandvik Mining & Constr. USA, Inc.*, No. 22-2331-HLT-TJJ, 2023 WL 3790691, at *2 (D. Kan. June 2, 2023) (internal quotation omitted).  The court therefore ordinarily has discretion to issue an order to prohibit the deposition of opposing counsel when any one or more of the three *Shelton* criteria are not met.  *Boughton*, 65 F.3d at 830.

12

Having clarified the applicable legal standard, the court now turns to the pertinent considerations here.

### a.   Savvas Has Not Established That Debiak Qualifies as "Opposing Counsel"

The threshold issue is whether Debiak qualifies as "opposing counsel."  Neither *Shelton* nor *Boughton* "implied a *per se* rule that in-house counsel are considered 'opposing counsel.'"  *See Roadbuilders Mach. & Supply Co.*, 2023 WL 2790691, at *2.  Nor is there a *per se* rule that in-house counsel who are not counsel of record in this lawsuit are not considered "opposing counsel."  *See Epling v. UCB Films, Inc.*, 204 F.R.D. 691, 694 (D. Kan. 2001).  Savvas, as the party seeking the protective order, has the burden of proof on this threshold issue.  *See Dauntless Enters., Inc. v. City Wide Franchise* Co., No. 23-2273-JAR-TJJ, 2023 WL 4351010, at *1 (D. Kan. July 5, 2023) ("The party seeking a protective order has the burden to show good cause for it.").  Another district court persuasively explained the rationale for placing this burden of proof on the party seeking the protective order:

> It makes sense that the burden of producing evidence to show what role counsel actually plays in a case—assuming that the answer to this question is not obvious, as it would be for outside litigation counsel and perhaps for in-house counsel who have entered an appearance in the case—should be on the party asserting that *Shelton* applies, since that party is in the best position to know exactly what counsel's role was or is.

*Libertarian Party of Ohio v. Husted*, 33 F. Supp. 3d 914, 926 (S.D. Ohio 2014).

Here, Savvas explains that Debiak provides legal advice to Savvas "regarding corporate and employment law, business law, and contract negotiations."  (ECF 104, at 5.)  Savvas relies on deposition testimony to argue that her involvement in discussions about terminating Willmore's employment was only in her capacity as a legal advisor, and not as a decisionmaker.  In response,

Willmore disputes Savvas's characterization of the pertinent deposition testimony on this point. Willmore contends that it "is clear" from the deposition testimony that "Debiak was not acting as legal advisor, rather she was opining on a business decision, namely should Plaintiff be provided progressive discipline or a performance improvement plan or was there sufficient grounds to fire her. These are business decisions, not legal advice." (ECF 108, at 4.) Both parties' arguments on this point miss the mark.

Whether in-house counsel qualifies as "opposing counsel" so as to trigger the *Shelton* factors harkens back to the court's reasoning in *Shelton*. The Eighth Circuit later clarified its ruling in *Shelton* in the case of *Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726 (8th Cir. 2002), albeit in a different procedural posture. In *Pamida*, the court explained that "the *Shelton* test was intend[ed] to protect against the ills of deposing opposing counsel in a pending case which could potentially lead to the disclosure of the attorney's litigation strategy." *Id.* at 730; *see also Libertarian Party of Ohio*, 33 F. Supp. 3d at 926 (primary rationale behind *Shelton* is to protect against the discovery of trial or litigation strategy). Because of this, courts have held that the *Shelton* criteria only limit deposition questioning when trial and/or litigation counsel are involved, such as in-house counsel in charge of managing the current lawsuit or formulating litigation or trial strategy, and, even then, sometimes only when such questioning would expose litigation strategy in the pending case. *See, e.g.*, *Pamida, Inc.*, 281 F.3d at 731 (allowing deposition of litigation counsel as to patent infringement case that was concluded, but not as to the current indemnification case); *see also Libertarian Party of Ohio*, 33 F. Supp. 3d at 926 (allowing deposition of General Counsel to the Secretary of State where the Secretary presented no evidence suggesting the attorney was actively involved in the case); *U.S. v. Philip Morris Inc.*, 209 F.R.D.

13, 17 (D.D.C. 2002) (allowing deposition of in-house counsel regarding non-privileged, pre-litigation factual matters).

Here, the record demonstrates only that Debiak was involved in discussions about terminating Willmore's employment—*i.e.*, the events that gave rise to this lawsuit. Savvas never asserts that Debiak has acted or is acting as a legal advisor to Savvas in connection with this litigation or is in charge of managing this lawsuit. There is nothing in the record from which the court could find that she has been "actively involved in this case, either as a supervising attorney for the litigation or as someone who has been involved in formulation of litigation or trial strategy." *Libertarian Party of Ohio*, 33 F. Supp. 3d at 926; *cf. Epling*, 204 F.R.D. at 694-95 (finding in-house counsel who was not counsel of record should be considered "opposing counsel" where the defendants affirmatively stated that he was "in charge of managing this litigation"). Accordingly, Savvas has not met its burden to establish that Debiak qualifies as "opposing counsel" for purposes of triggering the *Shelton* factors. The court could deny this aspect of Savvas's motion on this basis alone, but will nevertheless proceed to analyze whether there is good cause to issue the requested protective order regardless.

### b.    "Good Cause" Exists to Limit the Deposition

Although Savvas has not met its burden to establish that Debiak qualifies as "opposing counsel," the court does not rule out the possibility that she may be actively involved in the case, such that deposition questioning may implicate litigation or trial strategy. But the extent to which she is or has been actively involved in managing this case is simply unclear to the court because of the non-existent record on that issue. If Debiak is or has been actively involved in managing this litigation, allowing Willmore to depose her will inevitably raise the same concerns that animated cases like *Shelton*, *Boughton*, and their progeny. So, in order to guard against a

15

potentially harassing and unnecessary deposition, the court will proceed to determine whether there is good cause to issue a protective order placing time limits on Debiak's deposition, as informed by the *Shelton* factors.

According to Savvas, Willmore already has had other means to obtain information surrounding Savvas's decision to terminate Willmore's employment. As Savvas points out, Willmore has already taken depositions of at least seven other witnesses (Lippe, Lesser, Jolcover, Owen, Luzenske, Mathews, and Tatrow) about Savvas's reasons for terminating Willmore's employment. Two of those depositions (Lippe and Lesser) exceeded seven hours and one exceeded 13 hours (Jolcover, who was deposed in both her personal deposition and in her capacity as Savvas's Rule 30(b)(6) designee). (ECF 104, at 5-6.) All three of these individuals were involved in the decision to terminate Willmore's employment. According to Savvas, Lesser was Willmore's manager who made the initial recommendation to terminate her employment, and Lippe was the final decisionmaker. Lesser, Lippe, and Jolcover all testified at length about the facts surrounding Willmore's termination, including her poor performance and insubordination. (*Id.* at 6.) Debiak was involved in those discussions, too, although much of the testimony suggests that she was involved largely (if not solely) in her capacity as a legal advisor. Based on the record, the court finds that Willmore has had ample opportunity to conduct discovery on Savvas's reasons for terminating her employment.

Furthermore, it appears that Debiak probably has very little relevant, non-privileged information that she can share at deposition. She did not speak to Willmore, work with Willmore, or make the final decision to fire Willmore. (*Id.* at 5.) However, she was involved in the decision to terminate Willmore's employment, so, to the extent her input and involvement in that decision

did not consist of legal advice, Willmore is entitled to depose her regarding any non-privileged advice she offered concerning Willmore.  While the Federal Rules exempt privileged material from discovery, they "do not themselves exempt attorneys from being a source of discoverable facts." *Fugett v. Sec. Transp. Servs. Inc.*, No. 14-2291-JAR, 2015 WL 419716, at *2 (D. Kan. Feb. 2, 2015) (quotation omitted).  "Attorneys with discoverable facts, not protected by attorney-client privilege or work product, are not exempt from being a source for discovery by virtue of their license to practice law or their employment by a party to represent them in litigation." *Id.*  Here, the record is not clear that Debiak's only involvement in the decision to terminate Willmore was in her capacity as a legal advisor.  Certainly, it shows that she was consulted and provided advice in her capacity as a legal advisor and that she was not the final decision-maker in the decision to terminate Willmore.  But the record does not contain anything from which the court could find that she has no non-privileged knowledge about that decision.  Willmore is therefore entitled to examine Debiak to the extent the information sought is relevant and not privileged.

The court is also unpersuaded that Debiak's deposition testimony is crucial to the case.  To the contrary, her deposition appears to be largely unnecessary because it will likely involve exhaustive questioning on topics about which she has no knowledge, topics that already have been exhausted during Willmore's questioning of other witnesses, or topics that likely will try to delve into attorney-client privilege communications—with the inevitable result of countless calls to the court about badgering the witness or the legitimacy of privilege objections.

For all of those reasons, the court finds good cause to enter a protective order placing a presumptive one-hour limit on Debiak's deposition.  This one-hour limit is "presumptive" because the court will observe the deposition live.  At some point, Savvas may move to terminate the

deposition early (perhaps after only 15-20 minutes)—for example, if Willmore's counsel harasses the witness, tries to improperly invade the attorney-client privilege, and/or it becomes apparent that the witness has no more relevant, non-privileged knowledge to offer.  Conversely, at the end of the hour, Willmore may move to extend the deposition beyond one hour if necessary to explore Debiak's relevant, non-privileged knowledge about the facts of the case.  Either way, the court will be in a better position to determine how much time Willmore needs to have a full and fair opportunity to examine the witness.  The court directs counsel to contact chambers to coordinate the undersigned's attendance at Debiak's deposition.  The deposition may take place live at the courthouse or via Zoom if Debiak is located elsewhere.  During the deposition, it will be Savvas's counsel's prerogative and responsibility to properly instruct the witness as necessary to preserve any claims of privilege.

### c.     Willmore's Argument that Savvas Waived Privilege

Lastly, the court addresses Willmore's argument that Savvas has waived privilege by strategically producing "selected documents about Debiak's communications" and by virtue of Savvas's 30(b)(6) witness disclosing "Debiak's decisions, advice, and communications."  (ECF 108, at 5.)  This issue of privilege waiver will inevitably come up during Debiak's deposition, so the court will address it now in order to set the stage for the deposition to proceed expeditiously.

A party waives the attorney-client privilege if it discloses the substance of an otherwise-privileged communication.  *In re Qwest Communications Int'l Inc.*, 450 F.3d 1179, 1185 (10th Cir. 2006).  So, "for testimony to constitute a waiver of the attorney-client privilege, a party must disclose the *substance* of privileged communications."  *Sprint Commc'ns Co., L.P. v. Comcast Cable Commc'ns, LLC*, No. 11-2684-JWL, 2015 WL 11121850, at *3 (D. Kan. June 25, 2015) (emphasis in original).  "Underlying *facts* are not protected by the privilege."  *Id.* (emphasis in

original).  "Moreover, revealing the *general topic* of discussion between an attorney and client does not waive the privilege, unless the revelation also reveals the substance of a protected communication."  *Id.* (emphasis in original); *see also In re Joy Glob., Inc.*, No. CIV. 01-039-LPS, 2008 WL 2435552, at *6 (D. Del. June 16, 2008) ("If the law were otherwise, privilege logs would not be of any use, since an adequate privilege log must make a prima facie showing of each of the elements of the privilege, including providing some information on the subject matter of the materials being withheld.").  Lastly, "the privilege does not protect information concerning the *activities of the attorney*, such that testimony in that respect does not waive the privilege."  *Sprint Commc'ns Co*, 2015 WL 11121850, at *3 (emphasis in original) (internal quotations omitted).  The burden of showing that the privilege has not been waived remains with the party claiming the privilege, here, Savvas.  *Id.*[3]

Willmore argues that Savvas has disclosed the substance of privileged communications by producing an email regarding a meeting between Debiak and Lesser and through deposition testimony of Savvas's Rule 30(b)(6) deponent, Sheri Jolcover.  The court finds that Savvas has not waived the attorney-client privilege.  The court has reviewed the document Willmore uses to support its argument that Savvas "strategically produced selected documents about Debiak's communications (thereby waiving privilege)." (ECF 108, at 5.)  It is an email from Jolcover to Lesser with a cc: to Lippe "Re: Recommendation for Dismissal - Brenda Willmore."  Jolcover asks Lesser to be prepared to discuss some of the events that led up to Willmore's termination.  She concludes the email with "I will send a calendar invite to you and Debi Debiak."  (*Id.*)  Nothing

---

[3] The court does not address the at-issue waiver standard here because Willmore does not argue at-issue waiver.  (ECF 108, at 5.)

about this document is privileged.  It is a communication from a non-lawyer to two other non-lawyers about information leading up to a meeting with legal.  And it does not disclose the substance of privileged communications. At most, it reveals the general topic of an upcoming discussion between an attorney and the client, which is not privileged.  *See Sprint Commc'ns Co*, 2015 WL 11121850, at *3.

The court has also reviewed the Rule 30(b)(6) deposition testimony Willmore cites to support her waiver argument.  (ECF 108-2.)  Again, nothing in this testimony reveals the substance of privileged communications.  Jolcover merely testified that Debiak was part of the conversations leading up to Willmore's termination.  But of course she was.  She was admittedly consulted for legal advice.  Jolcover did not waive privilege by revealing the "general topic of discussion" (whether Willmore could be terminated), nor was privilege waived by revealing Debiak's "activities" in being involved in those discussions.  *See Sprint Commc'ns Co*, 2015 WL 11121850, at *3.  Willmore tries to twist this testimony into suggesting that Debiak "was part of the decision" or was "opining on a business decision."  (ECF 108, at 4.)  But the record is clear that the pertinent decisions were made by the non-lawyers and that Debiak was consulted.

The testimony does reveal the outcome of the consultation—i.e., Willmore's supervisor could move forward with a recommendation to terminate Willmore's employment.  (ECF 108-2, at 6-7.)  Typically, though, "a deponent does not waive attorney-client privilege when, in response to questions, the deponent references its interactions with the legal department" and "the answers the deponents provided were presumably elicited by … counsel in response to questions."  *DeWitt v. Sw. Bell Tel. Co.*, No. 12-2605-SAC, 2014 WL 695744, at *5 (D. Kan. Feb. 24, 2014) (finding no waiver of the attorney-client privilege based on deposition testimony in which deponents stated

they took certain actions after they "cleared it with legal" or "got approval from legal"). "Disclosure of the fact that a client has consulted an attorney, and even disclosure that an attorney approved a course of conduct, does not waive the privilege otherwise attaching to communications between an attorney and client on the subject of the consultation." *In re Joy Glob.*, 2008 WL 2435552, at *5 (citing cases); *see Libbey Glass, Inc. v. Oneida, Ltd*., 197 F.R.D. 342, 346-47 (N.D. Ohio 1999) (rejecting argument that deposition testimony that defendant's lawyers gave the "green light" to manufacture and purchase the glassware at issue waived the attorney-client privilege; stating that "[t]he passing allusions extracted in this case during depositions by opposing counsel did not disclose the substance of communications between Oneida counsel and the deponents").

In sum, the court finds that Savvas has not waived attorney-client privilege. Accordingly, the court will expect Willmore's counsel to respect Savvas's assertions of privilege during Debiak's deposition.

## II.    SAVVAS'S MOTION TO STRIKE PLAINTIFF'S SUPPLEMENTAL RULE 26 DISCLOSURES AND TO EXCLUDE UNTIMELY DISCLOSURES[4]

The court next considers Savvas's motion to strike or exclude the supplemental Rule 26(a) disclosures Willmore served on August 14, 2023—after the scheduling order deadline for supplemental disclosures and after discovery closed. These belated disclosures consisted of 33 pages of notes from Willmore's notebooks, calendars, and personal planners ranging in dates from June 2020 to May 2021. Savvas asks the court to exclude the untimely disclosures from use at trial or, alternatively, order Willmore's deposition be reopened for questioning regarding these late

---

[4] Although Savvas's motion is titled as a "Motion to Strike," Savvas does not seek to "strike" Willmore's Rule 26 supplemental disclosures (as the disclosures are not a pleading). Rather Savvas seeks to preclude Willmore from offering the supplemental disclosures as evidence at trial under Fed. R. Civ. P. 37(c)(1).

disclosures, with all costs incurred in addressing this discovery dispute assessed to Willmore. (ECF 103.)

### A.    Background

Discovery in this case opened at least by January 4, 2023, and Willmore timely served her Rule 26(a)(1) initial disclosures on January 13.  (ECF 9, 11.)  On January 25, the court entered a scheduling order that noted the parties' agreement to "exchange copies of the documents described in their Rule 26(a)(1) initial disclosures within 10 days after the court enters a protective order." (ECF 13, at 3.)  Following the court's entry of a protective order on February 28, Willmore timely served her initial-disclosure documents on Savvas on March 3.  (ECF 19, 21.)  Around that time, ESI and written discovery were underway.   In February, Savvas served its First Interrogatories, First Requests for Production of Documents, and First Requests for Admissions, and Willmore served her ESI disclosures.  (ECF 15, 17.)  Willmore served her first set of discovery requests to Savvas on March 3, and served her responses to Savvas's discovery requests on March 20.  (ECF 20, 25.)  Her March 20 responses to several of Savvas's document requests pointed to responsive documents already produced and additionally noted that "Plaintiff is in possession of numerous documents related to product and account information, catalogs, incentive plans, individual goals, and numerous other aspects of her employment with Defendant," which she would make available for inspection.  She directed Savvas to "see Calendars, Catalogs, Account Information (BW0425)," and pointed to a photograph of the referenced calendars, catalogs, and account information that was Bates-numbered BW0425.  (ECF 107-2.)

On May 5, Willmore served her first supplemental initial disclosures.  (ECF 107-3.) Willmore timely served these disclosures 40 days before discovery was at that time set to close on June 14.  These supplemental disclosures did not mention the calendars, catalogs, and account

information referenced in her March 20 discovery responses and pictured in BW0425, nor did Willmore produce copies of them at that time.  Savvas deposed Willmore two weeks later, on May 19.  (ECF 32.)  After that, the parties moved to extend the remaining scheduling-order deadlines by 60 days because e-discovery problems delayed Savvas's document production and the parties still needed to take additional depositions.  (ECF 40.)  The court granted the motion and amended the scheduling order such that discovery was set to close on August 11 (ECF 41), which meant the new deadline for supplemental disclosures was July 3 ("40 days before the deadline to complete all discovery" per the original scheduling order in ECF 13).

But Willmore did not serve the supplemental disclosures on July 3.  Instead, July 3 came and went, and so did the August 11 discovery deadline.  It was not until August 14 that Willmore served the supplemental disclosures at issue, consisting of 33 pages of notes from her calendars, notebooks, and personal planners.  (ECF 103, at 1.)  Savvas then requested a discovery conference with the court to discuss the belated disclosures.  (ECF 98.)  The court held the discovery conference on August 31 and, at that time, suggested that Willmore could avoid motion practice by agreeing to sit for a follow-up deposition regarding the late-produced documents.  Willmore rejected this proposal, so the court set a briefing schedule for Savvas's anticipated motion.  Savvas then filed the current motion to exclude Willmore's Rule 26(a) disclosures.

### B.    Willmore Did Not Properly and Timely Disclose Her Notebook and Calendar Entries Under Fed. R. Civ. P. 26(a)(1) and (e)

Early in the litigation process, a party must disclose, among other things, "a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment."  FED. R. CIV. P.

26(a)(1)(A)(ii).  A party must supplement a disclosure that is incomplete or incorrect "in a timely manner."  FED. R. CIV. P. 26(e)(1)(A).  Whether a supplement is timely depends on the facts and circumstances of each case.  *See Lenexa 95 Partners, LLC v. Kin, Inc.*, No. 20-2367-JWB-ADM, 2021 WL 2477008, at *3 (D. Kan. June 17, 2021).  Supplementations after the close of discovery do not satisfy Rule 26(e) when the party was able to serve the supplement sooner.  *See id.* at *3-*4 (finding proposed supplemental interrogatory response after the close of discovery untimely under Rule 26(e) because the party "could have and should have served a supplemental response . . . months ago").  While there is no bright-line rule that a party may not supplement after the close of discovery, the timing must be reasonable based on when the information was available to the party serving the supplement.  *See id.* at *3.

Here, Willmore served her supplemental disclosures on August 14 after the close of discovery.  Willmore was obviously aware of her own calendars, notebooks, and personal planners that are the subject of this motion since the start of this litigation.  Yet neither her March 3 initial disclosures nor her May 5 supplemental disclosures disclosed those items or any pages and notes contained therein.  Instead, Willmore waited until August 14 to serve the supplemental disclosures, which was *after* Willmore had already been deposed, *after* the deadline for supplemental disclosures, and *after* the discovery completion deadline.  Willmore could have and should have served her supplemental disclosures long ago so that Savvas could pursue any follow-up discovery that it believed was necessary.  Therefore, the supplemental disclosures are untimely.

Willmore contends she did not have to include the planner and notebook entries in her Rule 26(a) initial disclosures because they "do nothing to support her claims of age and gender discrimination."  (ECF 107, at 1-2.)  This argument makes no sense.  To prove discrimination

under Title VII and the ADEA, Willmore must present direct evidence of discriminatory intent or an inference of unlawful discrimination, including sufficient evidence demonstrating that Savvas's alleged legitimate, nondiscriminatory reasons for terminating her employment are pretext for discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) (establishing a burden-shifting framework in Title VII cases by which employee can show employer engaged in unlawful discrimination without any direct evidence of discriminatory intent); *Jones v. Oklahoma City Pub. Sch.*, 617 F.3d 1273, 1278-79 (10th Cir. 2010) (noting that "[t]this circuit has long held that plaintiffs may use the *McDonnell Douglas* three-step analysis to prove age discrimination under the ADEA" and concluding that the framework still applies to ADEA claims). Willmore says she intends to use these notebook entries to rebut Savvas's alleged legitimate, nondiscriminatory reasons for firing her (fabrication of entries in Salesforce, insubordination, and poor job performance) and to show that Savvas's explanation is mere pretext for intentional discrimination. (ECF 107, at 1-2.) This is an admission that she plans to use this evidence substantively to prove her discrimination claims, not solely for impeachment purposes. *See Slavin v. Garrison Prop. & Cas. Ins. Co.*, 805 F. App'x 561, 568 (10th Cir. 2020) (stating that the Circuit's "case law distinguishing evidence used solely for impeachment from substantive evidence in this context is not very developed," but the Circuit has "suggested that the evidence should have no substantive value") (citing *Searles v. Van Bebber*, 251 F.3d 869, 877 (10th Cir. 2001) ("If, as the judge saw it, the evidence was really more than mere impeachment evidence, then the witnesses should have been disclosed")).

Willmore also argues she was not required to supplement because Rule 26 recognizes that documents disclosed in discovery need not be made part of supplemental disclosures. (ECF 107,

at 3-4.)  In support of this argument, Willmore relies on the rule that a party must supplement a discovery response only "if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."  FED. R. CIV. P. 26(e)(1). Willmore contends that Savvas knew of the calendars and notebooks because Willmore produced a photograph of them and made them available for inspection in response to a document request from Savvas.  (ECF 109-1, Pl's Resp. to Def's RFP No. 1.)  She argues that, because Savvas's initial disclosures listed all discovery responses and documents produced by either party, her calendar and notebook entries were disclosed in discovery or "made known to the other parties during the discovery process or in writing."  (ECF 107, at 3 (quoting FED. R. CIV. P. 26(e)(1)(A)).)

The court rejects this argument.  Discovering relevant information in response to a document request "is not the same as discovering that the opposing party intends to rely on that information in support of its claims or defenses."  *Lenexa 95 Partners*, 2021 WL 2477008, at *2 (citing *U.S. ex rel. Nat'l Res. Def. Council v. Lockheed Martin Corp*., No. 5:99-CV-170, 2014 WL 6909652, at *6 (W.D. Ky. Dec. 8, 2014) ("Knowing of the statement and its factual context, however, is different from knowing that one's opponent alleges the statement was false.")). Generally, information is "otherwise made known" if it is "in such a form and of such specificity as to be the functional equivalent" of a supplemental disclosure or discovery response.  *L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc*., 125 F. Supp. 3d 1155, 1168-69 (D. Colo. 2015). "[P]ointing to places in the discovery where the information was mentioned in passing is not sufficient."  *Id*.

Here, Willmore's responses to Savvas's document requests, which offered inspection of "Calendars, Catalogs, Account Information" shown in a photograph Bates-numbered BW0425

(ECF 107-2), is not the functional equivalent of a Rule 26 supplemental disclosure. The responses did not provide Savvas with fair notice that Willmore intends to rely on these materials to support her claims or that these materials "probably will be or even might be used at trial." (ECF 13, at 3.) As emphasized in the scheduling order, the purpose of supplementation is to enable the opposing party to determine what, if any, additional discovery it may want to take before the close of discovery. (*Id.*) Had Willmore alerted Savvas that she planned to use the materials in the photograph to prove pretext at trial, Savvas could have assessed whether to ask her questions at her deposition about the entries in these planners and notebooks. But Willmore did not do this. Instead, she waited months before supplementing her initial disclosures and producing these 33 pages of notes, and worse, she did so after discovery closed. The "otherwise made known" exception in Rule 26(e) therefore does not apply here. Willmore failed to timely supplement her initial disclosures as required by Rule 26(e).

Lastly, Willmore contends the court should allow her to use these 33 pages of calendar and notebook entries for impeachment purposes, and the court should not make a blanket exclusion ruling at this juncture before it even knows what use or purpose the records will serve. (ECF 107, at 6.) But, because these records are Willmore's own personal notebook entries she authored, the court cannot fathom a scenario where Willmore could use these documents for impeachment. Savvas might use them to discredit her testimony and impeach her. Willmore, however, would be using the records to buttress her own testimony, not to discredit it. *See Olivarez v. GEO Grp., Inc.*, 844 F.3d 200, 204 (5th Cir. 2016) ("Impeachment evidence . . . is that which is offered to discredit a witness . . . [or] reduce the effectiveness of her testimony by bringing forth evidence which explains why the jury should not put faith in her or her testimony."); *United States v. Cerno*, 529

F.3d 926, 934 (10th Cir. 2008) ("Generally speaking, impeachment is the discrediting of a witness' veracity" that can be accomplished through "contradiction, which occurs when an opposing party endeavors to show that a fact to which the witness has testified is not true"). Here, Willmore seeks to use this evidence for more than just impeachment. It must have substantive value to her discrimination claims or she would not have served the Rule 26(a)(1) supplementation.

**C.     Sanctions Are Warranted Pursuant to Fed. R. Civ. P. 37(c)(1) for Willmore's Failure to Timely Disclose Her Notebook and Calendar Entries**

As a sanction for failing to disclose these records as required by Rule 26(a) or (e), the party is "not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). The court has broad discretion to determine when a Rule 26(a) or (e) violation is substantially justified or harmless. *HCG Platinum, LLC v. Preferred Prod. Placement Corp.*, 873 F.3d 1191, 1200 (10th Cir. 2017); *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co*., 170 F.3d 985, 993 (10th Cir. 1999). In making this determination, the court considers: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *HCG Platinum*, 873 F.3d at 1200. The party facing sanctions under Rule 37(c)(1) bears the burden to show substantial justification or harmlessness. *See Eldridge v. Gordon Bros. Grp., L.L.C.*, 863 F.3d 66, 85 (1st Cir. 2017); *Estate of McDermed v. Ford Motor Co.*, No. 14-CV-2430-CM-TJJ, 2016 WL 1298096, at *4 (D. Kan. Apr. 1, 2016) (same).

Willmore has not met her burden to show substantial justification or harmlessness, as she has not made any arguments bearing on any of the above factors. Savvas would suffer substantial

prejudice if Willmore was allowed to use the belated supplemental disclosures if Savvas is not allowed the opportunity to take additional discovery or depose Willmore concerning the entries in these planners and notebooks to see how she intends to use them to prove pretext. Savvas proposes that any prejudice could be cured by exclusion of the evidence. Although the Tenth Circuit disfavors a discovery sanction (i.e., exclusion of evidence) that would bar a party from pursuing her claims, *HCG Platinum*, 873 F.3d at 1201, excluding the information contained in these supplemental disclosures would not bar Willmore from pursuing her discrimination claims. It would simply bar her from presenting these materials to support her position that Savvas's reasons for firing her are a pretext for discrimination. The prejudice to Savvas also can be ameliorated by re-opening Willmore's deposition and allowing Savvas to question her regarding the late supplemental disclosures, which is what Savvas proposes as an alternative to exclusion.

For these reasons, the court finds that Willmore's failure to disclose is not harmless or substantially justified and orders Willmore to choose which sanction the court will employ to remedy Savvas's prejudice. Either (1) she will be precluded from using the planners and notebooks on motion practice or at trial, or (2) she will sit for deposition to answer whatever questions Savvas has about the documents and will pay Savvas's costs for the continued deposition, including costs for the court reporter, transcript, and/or videographer (if utilized at her first deposition). Either of these remedies should adequately address the prejudice to Savvas from Willmore's untimely supplemental disclosures. The court orders Willmore to file a notice with the court no later than **November 13, 2023**, stating the mutually agreed date, time, and place of the continued deposition.

If Willmore does not timely file this notice, she will be precluded from using them on motion practice or at trial.[5]

**IT IS THEREFORE ORDERED** that defendant Savvas Learning Company LLC's Motion to Reconsider Its Motion to Quash the Deposition of Debi Debiak, Esq., or in the Alternative, Motion for a Protective Order (ECF 104) is denied in part to the extent Savvas asks the court to reconsider its prior order quashing Debiak's deposition and granted in part to the extent that the court limits her deposition as set forth above.

**IT IS FURTHER ORDERED** that defendant Savvas Learning Company LLC's Motion to Strike Plaintiff's Supplemental Rule 26 Disclosures and to Exclude Untimely Disclosures from Evidence (ECF 103) is granted.  Willmore must file a notice with the court no later than **November 13, 2023**, stating the mutually agreed date, time, and place of the continued deposition, or Willmore will be precluded from using the documents disclosed in her August 14 supplemental disclosures on motion practice or at trial.

**IT IS SO ORDERED.**

Dated December 1, 2023, at Kansas City, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge

---

[5] Regardless of the path Willmore selects, the court will issue an order in the next 2-3 weeks to reset the deadline for the parties to submit a proposed pretrial order, the pretrial conference, and the deadline to file potentially dispositive motions.