## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

BRENDA WILLMORE,

          Plaintiff,

v.                                                                          Case No. 22-2352-TC-ADM

SAVVAS LEARNING COMPANY LLC,

          Defendant.

## MEMORANDUM AND ORDER

Plaintiff Brenda Willmore ("Willmore") filed this action for age and gender discrimination against her former employer, defendant Savvas Learning Company LLC ("Savvas"). This matter is now before the court on Willmore's Motion for Spoliation Sanctions and Request for Hearing on the Same. (ECF 155.) By way of this motion, Willmore seeks an order pursuant to Federal Rule of Civil Procedure 37(e) sanctioning Savvas for failing to preserve ESI on Willmore's work laptop and other company-owned devices at a time when she contends that Savvas knew or reasonably should have anticipated she would assert a legal claim against Savvas. Willmore's motion also requests an evidentiary hearing so that she can question Savvas witnesses about their knowledge of Willmore's impending legal claim against Savvas. The court has already denied the portion of Willmore's motion in which she requests an evidentiary hearing. (ECF 160.) For the reasons discussed below, the court now denies the remainder of Willmore's motion seeking spoliation sanctions because Willmore has not met her burden to show that Savvas had an obligation to preserve Willmore's ESI at the time the evidence was destroyed.

1

# I.    BACKGROUND

The general landscape of the issues in this case and the history surrounding Willmore's missing ESI is set out in the court's prior orders, familiarity with which is presumed. *See, e.g.*, *Willmore v. Savvas Learning Co., LLC*, No. 22-2352-TC-ADM, 2024 WL 3756277, at *19-*25 (D. Kan. Aug. 12, 2024). Briefly summarized, Savvas terminated Willmore's employment on May 18, 2021. Early in discovery, Savvas disclosed to Willmore that the ESI from her employment at Savvas was wiped and/or recycled after she was terminated and before Savvas "issued a legal hold in August 2021 when Savvas was placed on notice of potential litigation." *Id.* at *19. Savvas's Rule 30(b)(6) designee Jasjit Arneja explained these details. Savvas's protocol is to wipe former employees' devices and ESI shortly after the offboarding process unless a litigation hold is in place. (ECF 159-1, at 10-11, 14, 42-43, 45-46, 80-82.) On the offboarding ticket after Willmore's termination, the "hold" checkbox was not checked. (*Id.*) As a result, her laptop was wiped on or before July 15 and her Google account was deleted on July 23. (*Id.*) Savvas then had about 20 days, or until August 12, to recall the Google data. (*Id.*) Willmore's electronic devices and Google accounts were no longer available after that.

Meanwhile, Willmore's attorney sent two letters to Savvas dated August 10: (1) a letter saying Willmore would be filing a charge of discrimination and offering to discuss a resolution of her claims "in lieu of court proceedings," and (2) a document preservation notice. (ECF 143-7.) Savvas received this letter on August 17 and issued a litigation hold shortly thereafter. (*Id.*)

Willmore now seeks spoliation sanctions on the grounds that Savvas deleted all emails associated with her email address, recalled her Google drive license (which resulted in Google subsequently deleting all her Google files), and wiped all her devices—all with "full knowledge of an impending legal claim from Willmore and in contravention of its own document retention

policy." (ECF 155, at 1-2.) Willmore contends that "Savvas intentionally destroyed documents

that would tend to show its proffered reasons for terminating Plaintiff were pretextual." (*Id.* at 7.)

Willmore seeks the following relief:

> an order finding that Defendant Savvas engaged in intentional
> spoliation and sanctioning Savvas by instructing the jury that any
> emails and other ESI deleted by Savvas would have been favorable
> to Plaintiff, and order that Savvas is prevented from pointing to the
> Blue Valley and/or Derby accounts as justification for Plaintiff's
> firing, and order that Savvas is precluded from discussing the
> deleted emails, communications, and other ESI in any way at trial,
> and for Plaintiff's attorneys fees associated with preparing this
> motion, and for any other relief the Court deems just and proper.

(*Id.*)

## II.    THE COURT WILL NOT DENY THE SUBSTANCE OF WILLMORE'S MOTION AS UNTIMELY.

Savvas first argues the court should deny Willmore's motion for spoliation sanctions as

untimely under this court's local rules. Any discovery-related motion must be filed "within 30

days of the default or service of the response, objection, or disclosure that is the subject of the

motion, or, for all other disputes, within 30 days after the movant knew or reasonably should have

known of the potential dispute." D. KAN. RULE 37.1(d). The court "may deny any motion filed

after the 30-day period as untimely unless the movant demonstrates diligence in attempting to

resolve the specific discovery dispute at issue." *Id.*

The court could deny Willmore's motion as untimely under this rule for essentially the

same reasons the court denied her motion for additional discovery and second motion to compel

as untimely. *See Willmore*, 2024 WL 3756277, at *19-*25. In short, Willmore has known about

the missing ESI since March of 2023, throughout the entire discovery period, and yet waited until

long after discovery was closed to bring this motion. But the court will exercise its discretion in

this particular instance and not deny the motion on this basis because it is not clear that a motion

for spoliation sanctions necessarily qualifies as a discovery-related motion that is subject to the 30-day rule. Indeed, even Savvas argues the motion is "arguably" a discovery-related motion. (ECF 159, at 5.) But regardless of whether the motion is a discovery-related motion or an evidentiary motion, the purpose of the 30-day rule is to "ensure the court can address discovery disputes while they are still fresh, and in turn expedite litigation." *Willmore*, 2024 WL 3756277 at *23. Here, resolution of Willmore's motion for spoliation sanctions is not holding up the orderly and efficient administration of the case because the impact of any such spoliation sanctions would not be felt until trial. So denying the motion for failure to comply with the 30-day rule set forth in D. Kan. Rule 37.1(d) would not further the purposes of that rule.

However, the court has already denied Willmore's motion insofar as she requests an evidentiary hearing (ECF 160), and the court did so because of the 30-day rule set forth in D. Kan. Rule 37.1(d). "Discovery and evidentiary hearings on sanctions are permitted only by court order." D. KAN. RULE 11.1(A)(3). Willmore previously moved for more discovery on spoliation, and the court denied that motion as untimely because it was filed more than six months after discovery closed and even more months than that after the 30-day rule set forth in D. Kan. Rule 37.1(c) expired, and Willmore failed to show diligence in attempting to resolve the specific discovery disputes at issue. *See Willmore*, 2024 WL 3756277, at *19-*25. So the court has already ruled that Willmore is not entitled to additional discovery concerning spoliation. Yet Willmore's request for an evidentiary hearing, including compelled attendance by witnesses, seeks to give Willmore's counsel another opportunity to question witnesses about their knowledge of Willmore's impending legal claim against Savvas. In substance, it is simply another attempt to get another run at Savvas's witnesses. As the court previously explained, Willmore already had "ample opportunity to develop the . . . discovery record concerning this issue" and Savvas witnesses answered whatever questions

4

Willmore asked them on this subject. *See id.* at *24. At this point, the burden is on Willmore to present a discovery record that is sufficient to support the spoliation sanctions she is seeking. *See CCA Recordings 2255 Litig. v. United States*, No. 19-cv-2491-JAR-JPO, 2021 WL 2212758, at *6 (D. Kan. June 1, 2021) (party seeking spoliation sanctions bears the burden of proof by a preponderance of the evidence).

## III. WILLMORE'S MOTION FOR SPOLIATION SANCTIONS IS DENIED.

"As a general rule, spoliation sanctions are proper when (1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence." *Equal Employment Opportunity Comm'n v. JetStream Ground Servs., Inc.*, 878 F.3d 960, 964 (10th Cir. 2017) (internal quotations omitted). Federal Rule of Civil Procedure 37(e) provides for sanctions when a party fails to take reasonable steps to preserve ESI "that should have been preserved in the anticipation or conduct of litigation" and the ESI cannot be restored or replaced through additional discovery. FED. R. CIV. P. 37(e). "The rule does not apply when information is lost before a duty to preserve arises." *Id.* advisory committee's note to 2015 amendment. "In applying the rule, a court may need to decide whether and when a duty to preserve arose. Courts should consider the extent to which a party was on notice that litigation was likely and that the information would be relevant." *Id.*

### A. Savvas Had a Duty to Preserve at Least as Early as August 17, 2021.

The duty to preserve evidence certainly begins upon the filing of a lawsuit. *See Rockman Company (USA), Inc. v. Nong Shim Company, Ltd*, 229 F. Supp. 3d 1109, 1124 (N.D. Cal. 2017) (duty to preserve triggered by filing of complaint). But other pre-litigation events may also trigger the duty to preserve, such as the filing of a charge of discrimination or the receipt of a demand letter or document preservation letter. *See Hearne v. HUB Bellevue Props., LLC*, No. C16-1010,

5

2020 WL 2512872, at *4 (W.D. Wash. May 15, 2020) (holding a letter contemplating legal action and containing a preservation demand was sufficient to trigger the duty to preserve evidence); *O'Berry v. Turner*, 2016 WL 1700403 (M.D. Ga. Apr. 27, 2016) (finding duty to preserve arose when injured party's counsel faxed a spoliation letter demanding preservation by defendants); *Hawley v. Mphasis Corp.*, 302 F.R.D. 37 (S.D.N.Y. 2014) (holding employer had obligation to preserve relevant evidence on employee's laptop at least as early as its receipt of employee's second EEOC charge alleging employment discrimination); *In re Ethicon, Inc. Pelvic Repair Systems Prod. Liability Litig.*, 299 F.R.D. 502, 512 (S.D. W. Va. 2014) ("Before litigation begins, courts agree that the receipt of a demand letter, a request for evidence preservation, a threat of litigation, or a decision to pursue a claim will all trigger the duty to preserve evidence.").

Here, Savvas was on notice that litigation was likely, and hence it had a duty to preserve Willmore's ESI, when Savvas received Willmore's counsel's demand letter and document preservation notice on August 17, 2021. But by that time, Willmore's ESI had already been deleted pursuant to Savvas's standard offboarding process. *Willmore*, 2024 WL 3756277, at *21-*22. After Willmore was terminated, Savvas had her return her laptop, iPhone, and iPad. *Id.* Once she did, Savvas had her iPhone and iPad recycled pursuant to Savvas's standard protocol for devices that had been issued by Savvas's predecessor-in-interest. *Id.* Savvas wiped her laptop before reissuing it to a different Savvas employee on or before July 15, 2021. *Id.* And Savvas deleted her Google account on July 23, 2021. *Id.* After that, Savvas had 20 days—until August 12, 2021— to recall the data. *Id.* But Savvas did not do so because it did not receive Willmore's counsel's demand letter and document preservation notice until August 17, 2021. By that time, Savvas had no way to recover Willmore's laptop, cell phone, iPad, or Google account. *Id.*

6

**B.**     **Savvas's Attorney-Client Privilege and Work-Product Claims Do Not Establish that Savvas Had Notice of an Impending Legal Claim Before August 17, 2021.**

Willmore contends that "Savvas' duty to preserve was first triggered by emails exchanged between [Savvas in-house counsel Debi] Debiak and head of Human Resources Sheri Jolcover on May 3, 2021." (ECF 155, at 8.)  By way of background, the salient chain of events leading up to Savvas's termination of Willmore's employment are largely undisputed.  Willmore's supervisor, Mica Lesser, put together a formal recommendation dated May 2, 2021, that Savvas terminate Willmore's employment. *Willmore*, 2024 WL 3756277, at *19.  After consultation with Savvas HR representative Jolcover and Debiak in Legal, Savvas Senior Vice President James Lippe authorized the termination. *Id.*  On May 18, Lesser terminated Willmore's employment.  *Id.* Savvas's privilege log shows that Savvas withheld communications about Willmore's termination amongst Debiak, Jolcover, Lippe, Lesser and others dated May 3 and 5, 2021; and Debiak and Savvas General Counsel Andy Yoo on May 18 and 19, 2021 (the day of and the day after Willmore's termination); and on August 17 and 20, 2021 (the days on and just after Savvas received the demand letter and document preservation notice from Willmore's counsel).  (ECF 143-6.)  According to Willmore, all of this means that Savvas "clearly knew it would be defending a legal claim arising out of Plaintiff's firing (and specifically prepared for it)." (ECF 155, at 3.)

Willmore's speculation is insufficient to meet her burden of proof.  The court is aware of "no authority . . . that suggests an employer's duty to preserve ESI on an employee's computer arises whenever it terminates an employee." *CaramelCrisp LLC v. Putnam*, No. 19 C 2699, 2022 WL 1228191, at *6 (N.D. Ill. Apr. 26, 2022).  "It would be too onerous a burden to place on all employers a duty to preserve any and all documents that form the basis for the termination of an employee because of the possibility that the terminated employee might sue." *Banks v. Enova*

7

*Financial*, No. 10 C 4060, 2012 WL 5995729, at \*3 (N.D. Ill. Nov. 30, 2012); *see also Ramirez-Cruz v. Chipotle Servs.*, LLC, No. 15-CV-4514, 2017 WL 8947191, at \*5 (D. Minn. May 11, 2017) (mere fact that employer terminated a pregnant woman "does not transform the theoretical possibility of litigation into an imminent prospect of litigation requiring preservation"). "Indeed, mere termination of an employee is not the prevailing standard for an employer's duty to preserve ESI. Rather, an employer has a duty to preserve evidence only when it knew, or should have known, that litigation was imminent." *CaramelCrisp*, 2022 WL 1228191, at \*6 (quotation omitted). The court therefore turns more specifically to what Savvas's privilege log reveals about when Savvas knew that litigation was imminent.

Turning first to the privilege log entries themselves, Willmore asserts that "[a]ttorney client privilege only attaches to communications where a client seeks legal advice from a legal advisor for a specific legal purpose or matter" and that the privilege "specifically does not attach to general conversations between in-house counsel and members of a company's executive team." (ECF 162, at 3.) But these are not accurate statements of the law. The elements of the attorney-client privilege do not correlate to the duty-to-preserve standard—namely, whether the client "knew, or should have known, that litigation was imminent." *EEOC*, 878 F.3d at 964. Nor do the attorney-client privilege log entries themselves suggest that Savvas was on notice that litigation was imminent. Instead, the descriptions of the communications in May 2021 reflect consultation amongst the business unit decisionmakers, HR, and Legal before terminating an employee; and Legal reporting to the GC on employment issues generally, which included Willmore's termination. Such communications are commonplace in today's workplace because of the well-known possibility that a terminated employee might pursue litigation. But the mere possibility of litigation does not trigger the duty to preserve relevant documents. *See Cache La Poudre Feeds,*

*LLC v. Land O'Lakes, Inc*., 244 F.R.D. 614, 621 (D. Colo. 2007). Rather, Willmore bears the burden to show that Savvas "knew, or should have known, that litigation was imminent." *EEOC*, 878 F.3d at 964. Willmore has not met her burden by simply pointing to these attorney-client communications on the privilege log.

Willmore also points to privilege log entries involving communications in May of 2021 that Savvas withheld based on work-product claims. (ECF 155, at 12.) However, Savvas has withdrawn those work-product claims, and the court has reviewed the subject communications to assess whether those work-product claims were properly withdrawn. (ECF 164, 168.) The court finds that they were because those communications in May of 2021 were not made in anticipation of litigation. Rather, they are consistent with the rest of the record before the court, which reflects the business unit vetting the decision to terminate Willmore's employment through HR and Legal. Accordingly, Savvas's now-withdrawn work-product claims do not support that it had notice that Willmore was going to pursue a legal claim.

## C.    The Factual Record Does Not Support a Finding that Savvas Had Notice Before August 17, 2021, That Willmore Intended to Bring a Legal Claim.

Lastly, Willmore points to a portion of her declaration that she says provides "extensive circumstantial evidence showing Savvas knew a legal claim would be forthcoming and … was preparing for it even before she was fired." (ECF 155, at 6 n.1.) The cited portion of her declaration states that "it was and is my belief that Savvas expected a legal claim would occur as a result of me being fired" and then lists "[s]ome of the reasons for this," such as: she was a 20-year employee; she received positive performance evaluations and no documented performance issues in the years before she was fired; she received an award in 2019 for exceeding her sales quota; she was in two protected classes by being female and 59 years old at the time she was fired; and other considerations. (ECF 139-1 ¶ 14, at 12-13.) Notably, however, Willmore never says

9

she threatened litigation against Savvas or otherwise notified Savvas of her intent to file a lawsuit, either during her employment or when Savvas terminated her employment. Even when Willmore returned her laptop and other company-issued devices to Savvas, she did not notify Savvas that she was intending to bring a legal claim. And when Willmore returned the devices, she did not request that Savvas not delete or wipe any of the data on them. Likewise, Willmore's counsel did not send the demand letter and preservation notice until August 10 and, when he did, he sent those letters in such a way that Savvas did not actually receive them until days later. In sum, Willmore and her attorney had ample opportunity to provide Savvas with notice that Willmore was intending to bring a legal claim, and thus trigger Savvas's duty to preserve ESI, at a time when that ESI still existed. But they did not do so.

Likewise, the discovery record from Savvas witnesses does not support a finding that anyone at Savvas thought Willmore would bring a legal claim at any time before Savvas received the letters from Willmore's counsel on August 17. Lippe testified during his deposition that he did not remember talking to Debiak about Willmore possibly pursuing a legal claim at the time of her termination, and he did not know of anyone else connected to Willmore's termination who knew or suspected she would bring a claim. *Willmore*, 2024 WL 3756277, at *21. Similarly, when Willmore's counsel asked Lippe how he learned that Willmore was pursuing a legal claim against Savvas, Lippe testified that he learned about her legal claim when he received a request from Debiak asking him to ensure he kept all of his records pertaining to Willmore. *Id.* When Willmore's counsel asked Lesser when he became aware that Willmore was pursuing a legal claim, Lesser responded that he did not know "the exact day that [he] was asked to preserve documents for this case." *Id.* The preservation notices from Debiak would have been after August 17 because she did not issue a legal hold until a few days after Savvas received the letters from Willmore's

10

counsel. *Id.* at *22.  At that point, IT tried to determine if any of Willmore's data still existed, and determined that it did not.  *Id.*  As such, the court finds that Willmore has not met her burden to show that Savvas knew, or reasonably should have known, that Willmore would be bringing a legal claim at any time before her ESI was deleted.

## IV.    **CONCLUSION**

The court finds that Savvas's duty to preserve arose when Savvas received Willmore's demand letter and document preservation notice on August 17, 2021, because that is when Savvas was "on notice that litigation was likely and that the information would be relevant."  FED. R. CIV. P. 37(e) advisory committee's note to 2015 amendment.  Because the ESI at issue was deleted before a duty to preserve arose, Willmore has not met her burden to show that sanctions are warranted for Savvas's failure to preserve Willmore's ESI.  *See Joostberns v. United Parcel Services, Inc.*, 166 Fed. App'x 783 (6th Cir. 2006) (holding duty to preserve not violated where documents were destroyed in accordance with document retention program before defendant received notice of plaintiff's claims); FED. R. CIV. P. 37(e) advisory committee's note to 2015 amendment ("The rule does not apply when information is lost before a duty to preserve arises.").

**IT IS THEREFORE ORDERED** that plaintiff Brenda Willmore's Motion for Spoliation Sanctions (ECF 155) is denied.

**IT IS SO ORDERED.**

Dated November 22, 2024, at Kansas City, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge