**In the United States District Court
for the District of Kansas**

_____

Case No. 22-cv-02352-TC
_____

BRENDA WILLMORE,

*Plaintiff*

v.

SAVVAS LEARNING COMPANY, LLC,

*Defendant*
_____

**MEMORANDUM AND ORDER**

 Brenda Willmore sues her former employer, Savvas Learning Company, LLC, asserting that Savvas unlawfully terminated her because of her age and gender. Doc. 125. There are two pending motions: Savvas's request for summary judgment on both claims, Doc. 128, and Willmore's objection to the Magistrate Judge's denial of her request for an evidentiary hearing, Doc. 163. For the following reasons, Savvas's motion is granted, and Willmore's objection is overruled.

**I**

**A**

 Summary judgment is proper under the Federal Rules of Civil Procedure when the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "'material' if it might affect the outcome of the suit under the governing law." *Janny v. Gamez*, 8 F.4th 883, 898–99 (10th Cir. 2021) (quoting *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997)). And disputes over material facts are "'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 898 (quoting *Allen*, 119 F.3d at 839). Disputes—even hotly contested ones—over facts that are not essential to the claims are irrelevant. Indeed, belaboring such disputes undermines the efficiency Rule 56 seeks to promote.

At this stage, the parties must identify material facts by reference to "pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits, if any." *Sanderson v. Wyo. Highway Patrol*, 976 F.3d 1164, 1173 (10th Cir. 2020) (citation and internal quotation marks omitted); *see also* D. Kan. R. 56.1(d). The court "construe[s] the factual record and reasonable inferences therefrom in the light most favorable to the nonmovant." *Janny*, 8 F.4th at 899 (quoting *Allen*, 119 F.3d at 839–40). That said, the nonmoving party cannot create a genuine factual dispute by making allegations that are purely conclusory, *id.*, or unsupported by the record as a whole. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *see also Heard v. Dulayev*, 29 F.4th 1195, 1202 (10th Cir. 2022).

The moving party bears the initial burden of showing the absence of any genuine issue of material fact and entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1137 (10th Cir. 2016). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues as to those dispositive matters remain for trial. *Celotex*, 477 U.S. at 324; *Savant Homes*, 809 F.3d at 1137.

**B**

This is an employment discrimination case. In short, Willmore contends that Savvas unlawfully terminated her because of her age and gender. The following reflects the context in which this lawsuit arose.

Savvas is a "learning solutions company that develops and publishes educational materials in literacy, math, science, and the humanities disciplines." Doc. 129 at 2, ¶ 1.[1] It does so by way of publishing and selling materials in textbook and online digital platforms for pre-K through 12th grade students. *Id.* It works with various school districts across the country, including two of the largest in the state of Kansas, Derby School District and Blue Valley School District. *Id.* at 5–6.

Willmore worked at Savvas and its predecessor companies for over 20 years, from July 1999 to May 2021. Doc. 125 at ¶ 2.a.i. At the time of her firing, she was the only Account Manager for the State of Kansas and 59 years old. *Id.* at ¶ 2.a.iii; Doc. 129 at 3, ¶ 8. The parties seem

---

[1] All document citations are to the document and page number assigned in the CM/ECF system.

2

to generally agree that Willmore was responsible for selling Savvas's products to school districts in Kansas, meeting sales targets, and developing and supporting customer relationships to increase future sales. *See generally* Doc. 125 at 11 (describing Savvas's contentions). Her direct supervisor when she was terminated was Mica Lesser, who reported to James Lippe. Doc. 125 ¶ 2.a.iv; Doc. 129-2 at 14.

For years, Savvas had concerns about Willmore's performance. Her sales performance frequently fell below expectations. In 2017, 2018, and 2020, Willmore failed to meet her annual sales performance goals. Doc. 129 at 5, ¶ 22. And for 2021, she was not projected to come anywhere close to meeting her sales goal. *Id.* But her sales performance was not always poor: In 2019, she received Savvas's Pinnacle Award for exceeding her sales quota by over 200%. Doc. 125 ¶ 2.a.ii. In addition, Willmore had "issues working with specialists on [her] team." Doc. 129 at 5, ¶ 21. Savvas's specialists complained to Willmore's supervisor, Lesser, about Willmore's "lack of organization, customer relationships and her general overall business acumen."[2] *Id.*

And Savvas received negative feedback concerning Willmore from some of its largest Kansas customers. In 2018, for example, a Blue Valley School District Curriculum Director, Jennifer Luzenske, complained to Lesser that Willmore was unprofessional, unresponsive, and that she had incorrectly quoted an order for Blue Valley. Doc. 129 at 5–6, ¶ 23. Luzenske asked not to work with Willmore any longer, and Savvas removed Willmore from the Blue Valley account. *Id.* at ¶ 24. Two years later, Willmore reached out to Luzenske offering a product quote. *Id.* at ¶ 25. Luzenske replied to Willmore that Blue Valley had been working directly with Lesser and planned to continue doing so. *Id.* Willmore replied to Luzenske, stating that Lesser was "always willing to jump in and help," but Willmore would be Blue Valley's "main point of contact." *Id.* Luzenske then forwarded Willmore's email to Lesser, who replied to Luzenske that "this is being taken care of internally." *Id.* Luzenske replied to Lesser that having Willmore "as our representative is a deal breaker for us. We have not changed our position on that." *Id.*

---

[2] Nothing in the record explains who specialists are or what they do other than they are "below sales rep." Doc. 140-7 at 5. In context, it appears that they may be internal colleagues. Doc. 129-9 at 4 (describing specialists that complained about working with Willmore).

3

Willmore also had issues working with another Savvas customer, the Derby School District. On April 20, 2021, Alexis Tatrow, Derby's Instructional Coordinator, emailed Lesser and Lippe. Doc. 129 at ¶ 26. In that email, Tatrow explained that Derby was displeased with Willmore and asked that she be removed from the Derby account. *Id.* Tatrow also explained that Willmore had done a drop-in visit to introduce herself to Derby on March 3, but that Derby had not spoken with Willmore since that day. *Id.* This led Savvas to conclude that Willmore had falsely reported on Savvas's internal customer relationship management software that she had met with Derby because Tatrow said those meetings never happened. *Id.* at ¶ 29. Lesser then told Willmore not to contact Derby. *Id.* at ¶ 36.

Two weeks later, Savvas learned Wilmore had ignored Lesser's direction not to contact Derby. In particular, M. Claravon Mathews, Derby's STEM Instructional Coordinator, emailed Lesser to complain that Willmore had reached out to her the night before. Doc. 145 at ¶ 6. Lesser replied that he would speak with Willmore, that he had told Willmore that Derby would be working with someone else at Savvas, and that he did not know why Willmore had reached out. *Id.*; Doc. 140-22 at 24. Mathews also told Lesser that Derby was interested in a new Savvas product but had not heard anything about it. Doc. 129 at ¶ 29; Doc. 129-4 at 9–11. Again, Savvas checked Willmore's records and learned that Willmore had reported to Savvas that she had met with Derby to discuss the new product. Doc. 129 at ¶ 29. This further confirmed Savvas's conclusion that Willmore had falsified her customer entries and failed to follow the Savvas CEO's directive to discuss the new product with customers. *Id.* at ¶¶ 29, 32.

Despite the repeated direction not to contact Derby, Savvas learned Willmore immediately ignored its latest command. The next day, Mathews again emailed Lesser that "[Willmore] is continuing to reach out to me. Have you chatted with her?" Doc. 145 at ¶ 6; Doc. 140-22 at 32. Lesser replied: "Yes, I have, thank you for letting me know. I am sorry, it will stop, please let me know if it doesn't." Doc. 140-22 at 32. Lesser then emailed Willmore reminding her not to contact Derby. Id. at 34. Willmore replied to Lesser: "Ok, that explains why [Derby] hasn't returned my messages and calls." *Id.*

On May 2, Lesser recommended Willmore's termination to Savvas's Human Resources officials. Doc. 129 at ¶ 19. He specified the reasons for termination as Willmore's issues working with Savvas specialists, her poor sales performance, her issues with Blue Valley, and her issues with Derby. *Id.* at ¶¶ 20, 21, 22, 23. Sheri Jolcover, Savvas's

4

HR Director, replied to Lesser that the information he had compiled was not enough to approve Willmore's termination. Doc. 145 at ¶ 5. Lesser, Jolcover, Lippe (Lesser's supervisor), and Savvas's in-house counsel, Debi Debiak, then met to discuss Willmore's termination. Doc. 129 at ¶ 33. At this meeting, Lippe decided based on everyone's input to approve Willmore's termination. *Id.* Jolcover then sent Lesser suggested points for his termination call with Willmore. Doc. 129 at ¶ 34. The suggestions outlined how Lesser should approach the call, highlighting Willmore's removal from Blue Valley, poor performance and subsequent removal from Derby, and continued communications with Derby. *Id.*

Lesser terminated Willmore on May 18.[3] Doc. 125 ¶ 2.a.iii; Doc. 140-22 at 49. After the termination call, he sent Jolcover notes that stated he told Willmore she was terminated for insubordination due to reaching out to Derby and poor performance with Blue Valley. Doc. 129-11 at 3. At the time of her termination, Willmore was 59 years old. Doc. 125 ¶ 2.a.iii. Savvas replaced Willmore with Brian Owen, a younger man. *Id.* ¶ 2.a.

Willmore filed a charge with the Equal Employment Opportunity Commission alleging discrimination on the basis of age and sex. Doc. 129-7. Savvas responded to the charge. Doc. 140-23.

Willmore then filed this case and asserted two claims. First, she claims that Savvas terminated her because of her sex in violation of Title VII, 42 U.S.C. § 2000e-2(a)(1). Doc. 125 at 2. Second, she claims that Savvas terminated her because of her age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623(a)(1). Doc. 125 at 2. Savvas requests summary judgment on both claims. Docs. 128 & 129.

---

[3] On the morning Savvas was to terminate Willmore, Tatrow sent Lesser an email claiming that Willmore had again contacted Derby, this time sending them a meeting invitation. Doc. 129 at ¶ 35. Lesser then emailed Willmore asking her not to join the Derby meeting, Doc. 140-22 at 42, and forwarded Derby's email to Jolcover, Debiak, and Lippe as an illustration of "another example of [Willmore] reaching back out to the customer, after being told 2 to 3 times she is not to reach out to them." *Id.* at 39. Upon subsequent investigation, Savvas learned that someone other than Willmore, perhaps its marketing department, had sent the invitation. *Id.* at 44.

## II

Savvas offers legitimate, non-discriminatory business reasons for terminating Willmore, and Willmore has not demonstrated a genuine dispute of material fact that Savvas's reasons for terminating her were pretextual. Accordingly, Savvas's motion is granted. In addition, Willmore's objection to the Magistrate Judge's ruling on a discovery issue is overruled.

### A

Willmore contends that she was terminated because of her gender and age in violation of Title VII and the ADEA. Lacking any direct evidence of intentional discrimination, she relies on circumstantial evidence to support her claims.[4]

A Title VII sex discrimination or an ADEA age discrimination claim based on circumstantial evidence proceeds through the *McDonnell Douglas* framework. *Bennett v. Windstream Communications, Inc.*, 792 F.3d 1261, 1266 (10th Cir. 2015); *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1113 (10th Cir. 2007); *see also Laul v. Los Alamos Nat'l Lab'ys*, 765 F. App'x 434, 440 (10th Cir. 2019) (analyzing the plaintiff's Title VII and ADEA claims under *McDonnell Douglas*). Under that framework, a plaintiff bears the initial burden of establishing a prima facie case of unlawful discrimination. *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 969 (10th Cir. 2017). If he or she does so, the burden shifts to the defendant to articulate a "legitimate, nondiscriminatory reason" for taking its adverse action. *Id.* at 970. If the defendant satisfies its burden, the burden then shifts back to the plaintiff to prove that the defendant's proffered reasons were pretextual—*i.e.*, "not the true reason for the employment decision." *Id.*

**1.** Savvas's motion does not dispute that Willmore has made a prima facie claim of discrimination. Doc. 129 at 14. Thus, the burden shifts to Savvas to provide a legitimate, non-discriminatory reason for its decision. *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1193 (10th Cir. 2018).

---

[4] Neither party contends there is any direct evidence of discrimination, and each analyzes Willmore's claims under the *McDonnell Douglas* test. *See* Doc. 129 at 14; Doc. 140 at 25.

The burden to establish a legitimate, nondiscriminatory reason is "exceedingly light." *DePaula* 859 F.3d at 970. On a motion for summary judgment, a defendant need only "articulate a reason for the [action] that is not, on its face, prohibited and that is reasonably specific and clear." *Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1058 (10th Cir. 2020) (quotations omitted). It "need not persuade the court that it was actually motivated by the proffered reasons." *Tex. Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).

Savvas has met that burden. It asserts that it terminated Willmore for poor performance, insubordination, and falsification of meeting records. Doc. 129 at ¶ 18. The Tenth Circuit has held that all three of these reasons are legitimate, non-discriminatory reasons to terminate an employee. *See Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1125 (10th Cir. 2005) ("Poor performance is a quintessentially legitimate and non-discriminatory reason for termination."); *Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202, 1216 (10th Cir. 2022) (same); *Kendrick v. Penske Transportation Services*, 220 F.3d 1220, 1230 (10th Cir. 2000) (insubordination and falsification of records); *see also Hamilton v. Boise Cascade Express*, 280 F. App'x 729, 732 (10th Cir. 2008) (employer's proffered non-discriminatory reason was that it terminated employee for time-card fraud). These reasons are not facially discriminatory and are "reasonably specific and clear." *Frappied*, 966 F.3d at 1058 (quoting *E.E.O.C. v. Flasher Co.*, 986 F.2d 1312, 1316 n.4 (10th Cir. 1992)).

Willmore's counterarguments are unpersuasive. She essentially seeks to challenge the merits of the reasons Savvas identified for her termination. Doc. 140 at 26–31. These arguments are immaterial at this stage of the proceedings because a defendant "does not . . . need to litigate the merits of the reasoning, nor does it need to prove that the reason relied upon was bona fide, nor does it need to prove that the reasoning was applied in a nondiscriminatory fashion." *Frappied*, 966 F.3d at 1058 (quoting *Flasher Co.*, 986 F.2d at 1316 n.4). Rather, Savvas's burden is "one of production, not persuasion; it can involve no credibility assessment." *DePaula*, 859 F.3d at 970 (quoting *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 142 (2000)). As noted, Savvas has met this burden.

**2.** Once an employer satisfies its obligation to identify a lawful reason for the termination, the burden returns to the employee to show that the reason for his or her termination is pretext for discrimination. *See Lincoln*, 900 F.3d at 1193. A plaintiff "may show pretext by demonstrating the proffered reason is factually false, or that discrimination was a primary factor in the employer's decision." *Id.* (quoting *DePaula*,

859 F.3d at 970). In other words, a plaintiff may show that the defendant's reason is "so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude [it is] unworthy of belief." *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1039 (10th Cir. 2011); *see also Bekkem v. Wilkie*, 915 F.3d 1258, 1267 (10th Cir. 2019).

Pretext probes the true intentions of the defendant, so the focus is limited to "whether the employer honestly believed its reasons and acted in good faith upon them." *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1119 (10th Cir. 2007). A court's role "is to prevent intentional discriminatory . . . practices, not to act as a 'super personnel department,' second guessing employers' honestly held (even if erroneous) business judgments." *Dewitt v. S.W. Bell Tele. Co.*, 845 F.3d 1299, 1307 (10th Cir. 2017) (quoting *Young v. Dillon Cos., Inc.*, 468 F.3d 1243, 1250 (10th Cir. 2006)). All facts are examined "as they appear *to the person making the decision*, not as they appear to the plaintiff." *Debord v. Mercy Health Sys. of Kan., Inc.*, 737 F.3d 642, 655 (10th Cir. 2013) (citation and internal quotations omitted) (emphasis in original). Any doubts concerning pretext are resolved in the plaintiff's favor, but conjecture and bare allegations are not enough to show pretext. *Jencks v. Modern Woodmen of Am.*, 479 F.3d 1261, 1267 (10th Cir. 2007).

Willmore offers three primary arguments for why Savvas's justifications are pretextual. Doc. 140 at 32–39. None have merit.

*First*, she argues that "the people involved in Plaintiff's termination cannot agree on the reason Plaintiff was fired." Doc. 140 at 32. For example, she argues that Debiak claimed Willmore was fired for contacting Derby, but Lippe claimed she was fired for falsifying documents and failing to contact clients, and Jolcover claimed she was fired for her inability to work with Blue Valley. Doc. 140 at 32–33.

These are not inconsistencies. They are multiple and specific examples of Savvas's dissatisfaction with Willmore's job performance that are documented by the record. For instance, Lesser cited Willmore's poor sales performance, poor handling of Blue Valley, poor handling of Derby, and falsification of Savvas records concerning her sales efforts as the reasons for termination. Doc. 129 at ¶ 19. Jolcover's proposed talking points for Lesser noted Willmore's poor handling of the Derby account, poor handling of the Blue Valley account, and insubordination by contacting Derby. *Id.* at ¶ 34. And during the termination call, Lesser informed Willmore that she was terminated because of her insubordination, "but also other factors were taken into account, [s]uch as other accounts in Kansas like Blue Valley School

8

District asking for her removal from their account." Doc 129-11 at 3. All of these specific examples support Savvas's proffered reason that they terminated her for poor performance, insubordination, and falsification of employment records. *See Piercy v. Maketa*, 480 F.3d 1192, 1201 (10th Cir. 2007) (finding no inconsistency when the decision to terminate was based a multitude of evidence of the employee's infraction); *Jaramillo v. Colo. Jud. Dep't*, 427 F.3d 1303, 1311 (10th Cir. 2005) (noting that "the mere fact that the [employer] has offered different explanations for its decision does not create a genuine question of pretext"); *see also Litzsinger v. Adams Cnty. Coroner's Off.*, 25 F.4th 1280, 1291 (10th Cir. 2022) ("[P]retext cannot be established by the mere fact that the employer has offered different explanations for its decision.") (quotations marks omitted).

Willmore attempts to controvert these facts by arguing that Lesser's termination letter and Jolcover's talking points are inadmissible as unauthenticated hearsay. Doc. 140 at 13, 22. This effort to controvert the facts fails. Evidence need not be submitted in admissible form so long as its contents would be admissible. *Argo v. Blue Cross and Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006). Based on Lesser's sworn testimony, it appears likely that the letter and the talking points, along with their contents, would be admissible business records. *See* Fed. R. Evid. 803(6); *United States v. Ary*, 518 F.3d 775, 786 (10th Cir. 2008); *see also* Doc. 145-4 at 10–11; Doc. 145-5 at 16. (authenticating the documents). But even so, it is not entirely clear that the documents are hearsay because they are not offered "to prove the truth of the matter asserted." Fed. R. Evid. 801(c)(2); *see United States v. Brinson*, 772 F.3d 1314, 1322 (10th Cir. 2014) (noting that if a statement is "not offered for its truth, the statement is not considered hearsay"). Rather, the documents reflect Savvas's then-existing beliefs about Willmore's performance. *See Zamora v. Bd. of Educ. for Las Cruces Pub. Sch.*, 553 F. App'x 786, 790 (10th Cir. 2014) (citing *Faulkner v. Super Valu Stores, Inc.*, 3. F.3d 1419, 1434 (10th Cir. 1993)) (finding that a document was not hearsay because it was offered to demonstrate that the employer believed there were legitimate reasons for its decision); *cf. Fester v. Farmer Bros. Co.*, 49 F. App'x 785, 789 (10th Cir. 2002) (finding that the district court abused its discretion by excluding a report as hearsay that was offered to show the employer's state of mind in making the termination decision); *see also Piercy*, 480 F.3d at 1200–01 (noting that the employer's "good faith perception of the employee's performance" is what is relevant).

Willmore also attempts to controvert the facts surrounding her poor performance. Doc. 140 at 1, ¶ 1. She argues that she did not perform poorly, that she exceeded her sales goals in 2019, and that her 2020 performance review noted she had a "successful year." *Id.* While this is all true, the fact that she had performance issues is also true. It is uncontroverted that Willmore failed to meet her sales goals in 2018, 2019, and 2020, and that she was not even close to meeting her goals 2021. Doc. 129 at ¶ 22. And, to make matters worse, it is also uncontroverted that Blue Valley and Derby did not want to work with Willmore because of her poor performance. Doc. 129 at ¶¶ 25, 26.

Willmore argues that it is "disputed that Derby was upset with Plaintiff" because Jolcover noted in her suggested talking points that "Derby was very upset after being informed that . . . Plaintiff would no longer be their account manager." Doc. 140 at 3 ¶ 5. That selective quotation does not withstand scrutiny. When reading the language Willmore quotes in context with the entire document, it is clear that Derby remained upset *even though* Willmore would no longer be their account manager, not *because of* that fact. *See* Doc. 129-10 at 4. Moreover, the record is replete with evidence that Derby's (and Blue Valley's) displeasure was with Willmore specifically. *See* Doc. 140-22 at 1, 6, 32. And just because Willmore's performance was not universally poor does not mean it was not mostly poor as the record confirms. *See Argo*, 452 F.3d at 1203–04 (finding no pretext when employee had missed yearly performance goals but had "exceeded other performance goals" because the employer is "free to conclude that a long series of missed goals in one area justifies termination, notwithstanding adequate or even strong performance in other areas").

The Tenth Circuit decision on which Willmore relies, *Fassbender v. Correct Care Solutions, LLC*, 890 F.3d 875 (10th Cir. 2018), actually undermines her position. In that case, the Tenth Circuit found the employer's vague, unspecific, and inconsistent reasons for termination problematic. *Fassbender*, 890 F.3d at 887. The defendant had vaguely told the plaintiff that she was terminated because of the "severity of [the] offense, without elaborating on which of [the plaintiff's] specific acts led to this conclusion." *Id.* In one day, the plaintiff was given two different reasons for termination by different people. *Id.* And at the summary judgment stage, the defendant abandoned its prior explanations and proffered yet another reason. *Id.* That is different from Willmore's termination: Savvas has consistently maintained that it terminated Willmore for repetitive, numerous, and specific performance and insubordination issues. *See* Docs. 129-9, 129-10, 129-11, 140-23.

10

Willmore points to no evidence that Savvas "has changed its explanation under circumstances that suggest dishonesty or bad faith." *Litzsinger* 25 F.4th at 1291 (quoting *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 1002 (10th Cir. 2011)).

*Second*, Willmore argues that Savvas's proffered reasons are pretextual because they are implausible. Doc. 140 at 33. Implausibility is shown, she posits, because "before firing an employee for poor performance, there would need to be some documentation in the file communicating to the employee that he or she is not performing adequately," yet she "was not counseled, disciplined or terminated for anything to do with [Blue Valley]." *Id.* at 33–34. She also argues that one of the alleged insubordination incidents—contacting Derby on May 18—is implausible because "[Savvas] knew, before it communicated the termination to Plaintiff, that Plaintiff did not send the May 18, 2021, email invite." *Id.* at 34. And as to the failure to discuss the new product with Derby and the falsification of her sales activities, she argues that she did discuss the product with Derby and did not falsify her meeting entries. Yet, the material evidence says otherwise.

To begin with, Willmore points to no evidence establishing that it was Savvas's policy to document an employee's poor performance in her file before termination. *Contra* Doc. 140 at 33. And the law certainly does not require any, permitting an employer to fire an at-will employee, such as Willmore, without cause. *See Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1170 (10th Cir. 2007) (quoting *Rivera v. City & Cnty. of Denver*, 365 F.3d 912, 924–25 (10th Cir. 2004)) ("The relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct."); *Archuleta v. Colorado Dep't of Institutions, Div. of Youth Servs.*, 936 F.2d 483, 487 (10th Cir. 1991) ("Title VII does not ensure that employees will . . . be discharged only for meritorious reasons. Although the dismissal of an employee without cause may contribute to an inference of unlawful discrimination, it does not require such a finding."). But even if Savvas had deviated from its policy or established procedures to have a certain amount of documentation in an employee's file, that would not necessarily suggest implausibility. *Kincaid v. Unified Sch. Dist. No. 500, Kansas City, Kansas*, 94 F.4th 936, 949 (10th Cir. 2024) (citing *Fassbender*, 890 F.3d at 889) ("[A]n inference of pretext does not follow from every departure from standard procedure."); *see also Fuller v. Dep't of Child. & Fams.*, 805 F. App'x 601, 606 (10th Cir. 2020) (citing *Medlock v. United Parcel Serv. Inc.*, 608 F.3d 1185, 1192–93 (10th Cir. 2010)) (noting that a business reason is not

pretextual merely because it was made without reference to a preexisting formal policy).

There is an even bigger problem with Willmore's position. The record reflects that Savvas had ample reasons to terminate Willmore: Her sales performance was poor for several years, Blue Valley and Derby, two of the largest school districts in the State of Kansas, did not want to work with her, and Savvas believed she was misrepresenting her sales efforts. Doc. 129 at ¶ 19. Willmore does not explain why this is insufficient. *See Turner v. Pub. Serv. Co. of Colorado*, 563 F.3d 1136, 1146 (10th Cir. 2009) (finding no pretext for an adverse employment decision based on a record of poor performance); *Argo*, 452 F.3d 1193, 1202 (10th Cir. 2006) (same); *Brown v. Unified Sch. Dist. No. 501*, 822 F. App'x 710, 714 (10th Cir. 2020) (same).

And her effort to establish implausibility concerning the May 18 meeting invite also fails. *Contra* Doc. 140 at 34. She claims Savvas learned, through a subsequent investigation, that Willmore was not responsible for sending what might have been an automated invitation. But that is not the proper focus: The focus is on what the employer believed at the time the decision was made. *Young*, 468 F.3d at 1250 (citing *Rivera*, 365 F.3d at 924–25) (explaining that the relevant inquiry is "whether the employer's stated reasons were held in good faith at the time of the discharge, even if they later prove to be untrue"). The uncontroverted evidence establishes that Lesser, relying on an email from Tatrow, Blue Valley's Curriculum Director, concluded that Willmore had (once again) contacted Derby in immediate and direct conflict with Tatrow's request that Willmore no longer contact her and Lesser's instruction to Willmore to that effect. Doc. 129 at ¶ 38. Willmore has no evidence to contradict Lesser's then-existing belief. The fact that Lesser's understanding of this instance (which arose on the day Willmore was to be terminated) was later shown to be mistaken does not establish pretext. *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1311 (10th Cir. 2017) (quoting *Medley v. Polk Co.*, 260 F.3d 1202, 1208 (10th Cir. 2001) (noting that "when an employee is discharged because of an employer's honest mistake, federal anti-discrimination laws offer no protection").

Savvas's uncontradicted, well-founded belief that Willmore was manipulating her sales activity undermines her third implausibility argument. *Contra* Doc. 140 at 34–35. Willmore attempts to controvert this fact by arguing that she did not falsely report her sales data. *Id.* But as stated above, the question is what Savvas believed at the time it terminated her. *Johnson v. Weld Cnty., Colo.*, 594 F.3d 1202, 1211 (10th Cir.

12

2010). Indeed, when considering whether the proffered reason for the termination was pretext, the law makes plain that the focus is the facts as they appeared to the person making the decision to terminate at the time the decision was made. *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1231 (10th Cir. 2000). And the evidence is uncontroverted that Lippe, who made the decision to terminate Willmore, believed Derby's contention that Willmore failed to discuss the new products and, therefore, that Willmore's self-recorded meeting data was false. Doc. 129-4 at 10–11. Evidence that Savvas should not have made the termination decision because Willmore does not believe that she had done those things is insufficient to impugn Savvas's credibility. *Dewitt*, 845 F.3d at 1307 (quoting *Simmons v. Sykes Enterprises, Inc.*, 647 F.3d 943, 948 (10th Cir. 2011)); *see also Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1119 (10th Cir. 2007) (quoting *Piercy*, 480 F.3d at 1200) ("Even a mistaken belief can be a legitimate, non-pretextual reason for an employment decision.").

*Third*, Willmore argues that pretext may be inferred from the way that Savvas treated similarly situated employees. Doc. 140 at 37–38. To succeed on her contention, Willmore must have evidence that the identified employees were both similarly situated and have engaged in misconduct of comparable seriousness. *See McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006) (quoting *Kendrick*, 220 F.3d at 1230) ("[E]ven employees who are similarly situated must have been disciplined for conduct of 'comparable seriousness' in order for their disparate treatment to be relevant."); *Cooper v. Wal-Mart Stores, Inc.*, 296 F. App'x 686, 694 (10th Cir. 2008) (citing *Riggs*, 497 F.3d at 1121 n.4) (noting that the plaintiff has the burden of producing evidence that employees were similarly situated).

Willmore points to younger and/or male co-workers Brian Owen, Paul Richins, Leigh Ann Smith, and Matthew Heaps as examples of disparate treatment that give rise to an inference of pretext. Doc. 140 at 37–39. But each of these individuals is materially distinguishable from Willmore. Take Owen as an example. Savvas received a single verbal complaint from the Kansas City School District about Owen. Doc 145 at ¶ 7. Owen's supervisor spoke to the complainant and realized that there was no corroboration or documentation, that the complaint was speculative, and the matter died there. *Id*. Conversely, Savvas received multiple complaints about Willmore's poor performance from at least two customers who said they did not want to work with her, she was not meeting her sales goals, and Savvas also believed she

13

was being directly insubordinate by disobeying directives not to contact the dissatisfied districts. Doc. 129 at ¶¶ 20, 21, 22, 23.

So, too, with Richins and Heaps. Willmore notes that Savvas placed both Richins and Heaps on a performance improvement plan before terminating them. Doc. 140 at 37–38. It is not obvious how their treatment is materially different—all three were terminated for poor performance. And Willmore has not explained why placement on a performance improvement plan prior to termination is materially different treatment from simply being terminated without being placed on such a plan. *See Herrera v. United Airlines, Inc.*, 754 F. App'x 684, 692 (10th Cir. 2018) (citing *Swackhammer*, 493 F.3d at 1168) (noting that differential treatment must not be "trivial or accidental"). But assuming it could be construed as a difference in treatment, she has not established that Richins and Heaps are good comparators. Willmore was an Account Manager whose two larger accounts refused to do business with her, her performance was below expectations for several years, she was believed to be falsifying her sales efforts, and she had been insubordinate to her superiors. *See generally* Doc. 145 at 5–6, ¶ 14 (citing deposition testimony summarizing the differentiations). There is no evidence to suggest that Richins and Heaps held similar positions or that their violations were comparable to Willmore's. As a result, their treatment does not give rise to an inference of pretext. *See Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1121 (10th Cir. 2007) (rejecting a comparison to an employee with different transgressions).

And as to Smith, not only did her conduct failures fail to approach the magnitude of Willmore's, but she had a different supervisor. She is, therefore, not similarly situated for comparison purposes with Willmore. *See Kendrick*, 220 F.3d at 1233; *Rivera* 365 F.3d at 922 (quoting *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997) (noting that similarly situated employees are those who, among other things, "deal with the same supervisor"); *E.E.O.C. v. Flasher Co., Inc.*, 986 F.2d 1312, 1320 (10th Cir. 1992) ("Sometimes apparently irrational differences in treatment between different employees that cannot be explained on the basis of clearly articulated company policies may be explained by the fact that the discipline was administered by different supervisors.").

Put simply, neither Owen, Richins, Heaps, nor Smith were comparable to the repeated pattern of substandard conduct that Willmore had shown. As a result, Willmore cannot rely on their experiences to support her claim of pretext. *See, e.g., Salguero v. City of Clovis*, 366 F.3d 1168, 1177 (10th Cir. 2004) (finding that allegations of disparate

14

discipline did not suffice to show pretext because the facts indicated significant differences in conduct between plaintiff and the other employees); *Cooper*, 296 F. App'x at 694 (finding no pretext because none of the other employees had "as many findings of misconduct" as the plaintiff did and none of the allegations against the other employees involved offenses "as serious" as the plaintiff's).

**B**

After the close of discovery, Willmore filed a Motion for Spoliation Sanctions and Request for Hearing on the Same. Doc. 155. The Magistrate Judge denied that request to the extent that it asked for an evidentiary hearing. Doc. 160; *see also* Doc. 170 (denying Willmore's motion for spoliations sanctions). Willmore then objected to the Magistrate Judge's order denying her an evidentiary hearing. Doc. 163. That objection, like her previous objections, is based on ad hominem and unsupported personal attacks against the Magistrate Judge. *See* Doc. 163 at 1 (noting that the Magistrate Judge's order "continues the perception that the Magistrate is going out of her way to penalize Plaintiff and her counsel"); *see also* Doc. 118 at 2–3 (denying motion that made similar ad hominem allegations); Doc. 133 at 1–2 (same). After reviewing the Magistrate Judge's order, the pertinent record giving rise to Willmore's objection, the relevant rules of civil procedure, and the applicable caselaw, Willmore's objection is without merit. Accordingly, her objection is overruled.

**III**

For the foregoing reasons, Savvas's Motion for Summary Judgment, Doc. 128, is GRANTED, and Willmore's objection, Doc. 163, is OVERRULED.

It is so ordered.

Date: November 22, 2024       s/ Toby Crouse
                              Toby Crouse
                              United States District Judge

15